Melvin Belton **EMBREE**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 18393.

United States Court of Appeals Ninth Circuit.

June 27, 1963.

Edgar Paul Boyko, Los Angeles, Cal., and Leroy Donkin, Santa Monica, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, Russell R. Hermann, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before POPE, HAMLEY and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge.

Under the first count of a four-count indictment, Melvin Belton Embree and Charles Franciscos Llopis, Jr., were charged, tried, convicted and sentenced for receiving and possessing goods stolen from interstate commerce in violation of 18 U.S.C. § 659. Under the second count of that indictment Embree, Llopis, Ad-

kins Taylor and James Clark were charged and tried, and Embree and Llopis were convicted and sentenced, for engaging in a conspiracy to sell goods stolen from interstate commerce in violation of 18 U.S.C. § 371. The trial was to the court sitting without a jury.

Embree appeals, contending that on neither count is the finding of this guilt supported by substantial evidence.

Count one pertained to eighty-four cases of Grand McNish Scotch whiskey and several cartons of radio equipment and other goods which were stolen in Los Angeles while in transit by truck from points in Texas and Oklahoma to consignees in Los Angeles. Count two pertained to the same eighty-four cases of whiskey. The violations were alleged to have occurred in January, 1962.

The evidence relied upon by the Government as proving that Embree knowingly received or possessed some of these stolen goods, and engaged in a conspiracy to sell some of the whiskey, knowing it to have been stolen, considered in the light most favorable to the Government, tended to establish these facts:

(1) Early in January, 1962, Embree had a conversation with one David Schuman from whom he was in the process of purchasing a car. During this conversation Embree mentioned that he knew someone who had twenty or thirty cases of whiskey for sale and that he would find out how much that person wanted for it.

(2) On the following day Embree called Schuman on the telephone to discuss the automobile transaction. During that conversation Schuman asked Embree about the price of the whiskey to which the latter had referred on the previous day. Embree gave Schuman a price but Schuman told Embree that it was too much "and I didn't want to fool with it."

(3) On the late morning of January 24, 1962, for the purpose of arresting Embree, a police officer of Vernon, California, and three agents of the Federal Bureau of Investigation went to Embree's home in Los Angeles. Two of the F.B.I. agents went to the front door and the other agent and the police officer took positions on opposite sides of the house, towards the rear. One of the agents "banged" on a door, and the F.B.I. agent on the opposite side of the house shouted that he was an F.B.I. agent and to "halt." Embree then "came running around the corner of the house," where the police officer was standing. This officer, who had his gun out, cried, "Police officer, you are under arrest. Halt." Embree then stopped running, backed up two or three feet or went around the corner of the house, put his hands on the wall and called out to a woman in the house, "Call my attorney." The record does not indicate whether there was a warrant for Embree's arrest, and, if so, whether it was displayed to Embree.[1]

1. In addition to the facts summarized above, the Government calls attention to conversations Schuman had with defendant Clark; a telephone conversation which Schuman and defendant Clark had with an unidentified person; a conversation between Clark and one Algy F. Landry, a detective sergeant in the Los Angeles County Sheriff's office; a conversation Landry had with defendant Llopis; and a conversation deputy sheriff William R. Farrington had with defendant Taylor. We can disregard the obvious hearsay aspects of such conversations because this evidence was not objected to on that ground. In none of these conversations, however, was Embree's name mentioned, nor was anything said which in any way, directly or circumstantially, connected Embree with the violations in question.

There was also testimony by the Vernon police officer and one of the F.B.I. agents recounting conversations they had with third persons out of the presence of Embree, during which the third persons implicated Embree in the unlawful transactions. Timely objections were made to all of this testimony on the ground that it was hearsay as to Embree. Each such objection was sustained, the court announcing that such testimony would be received only against one or another of the other defendants. In view of the exclusion of this testimony insofar as Embree is concerned, the Government quite properly grants that this testimony cannot be relied upon in support of the finding of guilt.

■ The facts stated above, considered separately or together, provide no basis for a finding that Embree received or possessed any of the articles stolen from the interstate shipment, or that he knew that any such articles had been stolen. They provide no basis for a finding that Embree conspired with others to sell whiskey stolen from this interstate shipment. They provide no proof of any of the overt acts charged in the conspiracy count.

The first two facts stated above show only that, in January, 1962, following the theft, Embree knew someone who had twenty or thirty cases of some kind of whiskey for sale; that, for the accommodation of Schuman, Embree was willing to inquire as to the price of the whiskey; and that he did so and reported that price back to Schuman.

During these transactions no mention was made of the theft in question, or the name of any of the other defendants, or the brand of whiskey to which Embree was referring. Nor was anything said to indicate that Embree had any connection with the "twenty or thirty cases of whiskey" to which he was referring, other than that he had learned that someone with whom he was acquainted had it for sale, and that he was able to and did learn and pass along to an acquaintance the price for this whiskey.

■ The third fact referred to above, pertaining to Embree's attempt to avoid arrest is equally innocuous. The conduct of an accused person in seeking to flee following the commission of an alleged crime may be circumstantially relevant to prove both the commission of the act and the intent and purpose with which it was committed. See Rivers v. United States, 9 Cir., 270 F.2d 435, 438. But in order to have such relevance it must be shown that the person attempting to flee had reason to believe that he was being, or would be, sought in connection with the commission of the particular offense in question.

■ Perhaps Embree's flight tends, circumstantially, to prove that he was guilty of some crime. But since there is nothing in the record to indicate that he was informed, before his attempted flight, that he was being sought in connection with the offenses involved in this case, such flight does not constitute an admission, or other evidence, that he is guilty of those crimes.

It is therefore our opinion that the evidence is wholly insufficient to support the finding that Embree is guilty of the crimes charged in the indictment.

The judgment is reversed and the cause is remanded with directions to dismiss the indictment as to Embree.