**UNITED STATES of America ex rel. Michael O'CONNOR, Appellant,**

v.

**The STATE OF NEW JERSEY and Howard Yeager.**

No. 16708.

United States Court of Appeals
Third Circuit.

Submitted on Briefs Oct. 24, 1968.

Decided Jan. 2, 1969.

Michael O'Connor pro se.

Abel Goldstein, Asst. Prosecutor, James A. Tumulty, Jr., Prosecutor of Hudson County, Jersey City, N. J., for appellees.

Before HASTIE, Chief Judge, and SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

■■ Three months after appellant was indicted for murder by a state grand jury in New Jersey, he was arrested in New York as a fugitive felon and returned to New Jersey for prosecution.[1] He was then interrogated by police of-

---

1. The indictment charged the defendant in two counts of murder and manslaughter. The victim was fatally shot in a barroom fight in Jersey City, New Jersey, on August 27, 1962. Prosecution witnesses testified that there was a scuffle between the victim and the defendant during which the gun discharged.

ficers who did not advise him of his right to remain silent; at this time he was not represented by counsel. Certain incriminating statements made by him at this interrogation were introduced at trial.[2] He was convicted on May 8, 1963, and sentenced to life imprisonment.

The New Jersey Supreme Court affirmed the conviction on June 22, 1964;[3] the United States Supreme Court denied certiorari on November 16, 1964.[4] He availed himself of the appropriate state post-conviction procedures,[5] and then sought habeas corpus relief in the District Court.[6] He now appeals from the order of the court below denying relief.

We must decide whether the introduction at his state trial of post-indictment incriminating statements made without counsel violated constitutional principles enunciated in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, decided on May 18, 1964, while appellant's case was on direct appeal.[7]

The District Court concluded that although O'Connor was interrogated after indictment while he was without counsel and not advised of his right to remain silent, the rule of Massiah was nonetheless subject to the same retroactive limitation as Escobedo and Miranda.[8]

Before we reach the question of whether the Massiah ruling enunciated in 1964 may be applied to the 1963 trial of this appellant, it is necessary to decide if the present appeal falls within the substantive rule of that case. If it does not,

---

2. Trial counsel did not object to the admission of this testimony, but this does not constitute a waiver which would preclude raising the issue on appeal. The Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege". Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837 (1963). Moreover, considering the law at the time of O'Connor's trial, it would have been a futile gesture to have objected to its admission. Under such circumstances, this Court has repeatedly held that the failure to object does not constitute a waiver. United States ex rel. Mancini v. Rundle, 337 F.2d 268 (3 Cir. 1964); United States ex rel. Campbell v. Rundle, 327 F.2d 153 (3 Cir. 1964); Wade v. Yeager, 377 F.2d 841 (3 Cir. 1967). See "Problems in Federal Habeas Corpus Involving State Prisoners", by Circuit Judge Donald P. Lay (8 Cir.), 45 F.R.D. 45, 58 (1968). Judge Lay suggests that "the same kind of technical forfeiture and waiver [failure of counsel to raise basic constitutional issues at trial] when offered to dispose of constitutional claims of state prisoners bringing federal habeas corpus actions, is generally abhorred by the Supreme Court, as is clear in Fay v. Noia, and in the host of cases that have followed that ruling. See, e. g., Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); United States ex rel. McLemore v. Russell, 371 F.2d 554 (3 Cir. 1967); Noble v. Sigler, 351 F.2d 673 (8 Cir. 1965)."

3. State v. O'Connor, 42 N.J. 502, 201 A.2d 705.

4. 379 U.S. 916, 85 S.Ct. 268, 13 L.Ed. 2d 187.

5. New Jersey post-conviction relief was sought on February 23, 1965, and denied by the trial court on October 18, 1965. The New Jersey Supreme Court dismissed an appeal from the judgment denying relief on December 14, 1965.

6. Pursuant to 28 U.S.C. § 2241(a), (c) (3), 2242 et seq.

7. Appellant concedes that under the non-retroactive rule of Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966), the principles of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) have no application. Under the Johnson rule, Escobedo affects only those cases in which the trial began after June 22, 1964; Miranda, those trials which began after June 13, 1966.

8. In its order and opinion dismissing the petition, the District Court observed that: "If an incriminating statement such as was introduced here bearing upon flight from the scene of a crime was offered in a trial subsequent to June 22, 1964, the date of decision in Escobedo v. Illinois, 378 U.S. 478 [84 S.Ct. 1758] (1964), resolution of the question presented would not be free of difficulty."

then the chronology of the cases becomes an immaterial point.

The defendant in *Massiah* was accused of a federal narcotics offense. Following his arrest, he retained counsel, was indicted, pleaded not guilty, and was released on bail. While he was free on bail, a federal agent, with the cooperation of a co-defendant, surreptitiously monitored a conversation between Massiah and the co-defendant. The substance of the conversation containing incriminatory statements was introduced at trial, and he was convicted. The Supreme Court held that the introduction of the extrajudicial statements violated the accused's Sixth Amendment right to the aid of counsel, stating:

> "This view no more than reflects a constitutional principle established as long ago as Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, where the court noted that ' * * * during perhaps the most critical period of the proceedings * * * that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation [are] vitally important, the defendants * * * [are] as much entitled to such aid [of counsel] during that period as at the trial itself.'" 377 U.S. at 205, 84 S.Ct. at 1202.

Citing Gideon v. Wainright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), *inter alia*, the Court continued: "The same basic constitutional principle has been broadly reaffirmed by this Court." But the Court then added: "Here we deal not with a state court conviction, but with a federal case, where the specific guarantee of the Sixth Amendment

directly applies." This was an obvious implication that the rule of *Massiah* was to apply only to federal prosecutions,[9] although the reasoning in the opinion was expressed in terms of "basic constitutional principles". The opinion concluded:

> "All that we hold is that the defendant's own incriminating statements, obtained by federal agents under the circumstances here disclosed, could not constitutionally be used by the prosecution as evidence against him at trial." 377 U.S. at 207, 84 S.Ct. at 1203.

*Massiah* left three important questions unanswered: (1) Was it applicable only to federal prosecutions? (2) Was it restricted to special "circumstances" or did it confer an absolute right to counsel in all cases following indictment? (3) Was it to be applied retroactively?

The first of these questions was answered in Lyles v. Beto, 379 U.S. 648, 85 S.Ct. 613, 13 L.Ed.2d 552 (1965). The defendant in *Lyles* had been convicted of burglary in a state prosecution. His extrajudicial confession given after indictment while not represented by counsel was introduced at trial. Relying on Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959),[10] Crooker v. California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958) and Cicenia v. LaGay, 357 U.S. 504, 507, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958), the Fifth Circuit held that there was no absolute right to counsel after indictment which, absent a showing of special circumstances, vitiated the validity of voluntarily-given statements by the accused.

---

9. See Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) and McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), both of which were exercises of the Supreme Court's supervisory powers over the administration of the federal courts and not applicable to state prosecutions.

10. The *Spano* decision held that incriminating statements obtained through interrogation after indictment while the defendant was not represented by counsel were inadmissible because of the particular circumstances of the case. Four justices concurring were of the opinion that there was an absolute right to counsel after indictment and that statements obtained from a defendant without counsel were inadmissible at trial.

Without opinion, the Supreme Court remanded the case "for reconsideration in light of Massiah v. United States". The clear implication of this action was that *Massiah* applied to both federal and state prosecutions.[11]

Whether *Massiah* would be applied selectively to special "circumstances" was a question that remained,[12] but one which was to find an answer in McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965). Convicted in an Ohio prosecution, McLeod challenged the admission of his extrajudicial statements made voluntarily after indictment without counsel. The incriminatory remarks were unsolicited by the police without any element of trickery, deception or subterfuge.

The Ohio Supreme Court dismissed the appeal as presenting "no debatable constitutional question".[13] The United States Supreme Court granted certiorari and, as it had done in *Lyles,* remanded the case for "consideration in light of Massiah v. United States".[14]

On remand, the Ohio court, with two justices dissenting, determined that because McLeod's statements were volunteered without police solicitation, there being no circumstances of trickery or subterfuge present, the rule of *Massiah* was not controlling. The Supreme Court again granted certiorari and reversed the conviction without opinion "on the

authority of Massiah v. United States". 381 U.S. 356, 85 S.Ct. 1556.

■■ By its disposition of *McLeod* the Court has said, in effect, that *Massiah* commands an absolute right to counsel after indictment, thereby vitiating the validity of all oral communications between the defendant and the police made in the absence of counsel.[15] The "investigatory v. accusatory" test of *Escobedo* and the "in custody" test of *Miranda,* employed to determine when the right to counsel attaches, have no application once the indictment has formally stamped the suspect as *the* defendant; only a clear, explicit, and intelligent waiver may legitimate interrogation *without counsel following indictment.

Four days prior to the Supreme Court's final decision in *McLeod,* this Court had occasion to review the impact of *Massiah* in United States ex rel. Russo v. New Jersey, 351 F.2d 429 (3 Cir. 1965).[16] Although *Russo* involved a pre-indictment interrogation, we noted that under the authority of *Escobedo* and *Massiah:*

"Where the right [to counsel] attaches any confession obtained in the absence of counsel must be suppressed independent of any issue of the voluntariness of the confession." 351 F.2d at 436.

11. The application of *Massiah* to state prosecutions has since been recognized in the following state decisions: Commonwealth v. Coyle, 427 Pa. 72, 233 A.2d 542 (1967); Elliott v. Warden, 243 Md. 627, 222 A.2d 55 (1966); State v. Blanchard, 44 N.J. 195, 207 A.2d 681 (1965). See also 79 Harvard L. Rev. 935, 999 (1966).

12. The three justices dissenting in *Massiah* interpreted the majority opinion as excluding "all admissions made to the police, no matter how voluntary and reliable". 377 U.S. at 209, 84 S.Ct. at 1204.

13. Ohio v. McLeod, 173 Ohio St. 520, 184 N.E.2d 101 (1962).

14. McLeod v. Ohio, 378 U.S. 582, 84 S.Ct. 1922, 12 L.Ed.2d 1037 (1964).

15. As a consequence of the *McLeod* decision, the Supreme Court of New Jersey, from which state conviction this appellant appeals, has since reversed its prior interpretation of *Massiah* which had confined its application to special circumstances. In State v. Green, 46 N.J. 192, 215 A.2d 546 (1965), the court concluded that: "In the light of *McLeod* we must now interpret *Massiah* as holding that after a defendant is indicted any statement elicited by the police in the absence of counsel is inadmissible even where the statement is voluntarily given." 215 A. 2d at 551.

16. *Russo* was decided on May 20, 1965; *McLeod,* on May 24, 1965.

The final decision in *McLeod* four days later confirmed this interpretation.[17]

The import of *McLeod* to the case at bar, however, goes beyond a determination that *Massiah* has recognized an absolute right to counsel after indictment. By returning the case to the Ohio tribunals for retrial and reconsideration, the Court has indicated that *Massiah* is applicable, at a minimum, to all cases pending direct appeal on May 18, 1964, the date of the *Massiah* decision.[18] On that date the appellant's case was still before the New Jersey Supreme Court. We therefore hold that the District Court below erred when it concluded that the appellant could not avail himself of the *Massiah* doctrine even though his case qualified as one being on direct appeal.[19]

Having decided that the incriminating statements of the defendant were not properly admissible, we must now determine whether their use amounted to "harmless error". Under the rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), certain constitutional defects

17. After the decision in *Russo*, a petition for rehearing on the question of retroactivity was presented. In a *per curiam* opinion filed with the court's opinion per Chief Judge Biggs, we declined to rule on the question as not having been timely raised. As it relates to *Russo* and *Escobedo*, the Supreme Court's holding in *Johnson* settled the question.

18. That the Supreme Court denied certiorari to this appellant is "without substantive significance". United States ex rel. Smith v. Baldi, 344 U.S. 561, 73 S. Ct. 391, 97 L.Ed. 549 (1953); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L. Ed. 469 (1953).

19. There is nothing novel about this limited concept of "retroactivity", if it may technically be called such. The same procedure was followed in the implementation of the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081 (1961), in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed. 2d 601 (1965), where it was held that although *Mapp* would receive only prospective application, nonetheless, all cases not finally determined at the time of the *Mapp* decision would be governed by its rule. The Court said: "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision * * *." 381 U.S. at 622, 85 S.Ct. at 1734, note 5. This concept was applied by this Court in Wade v. Yeager, 377 F. 2d 841 (3 Cir. 1967). A similar conclusion was reached in Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S. Ct. 459, 15 L.Ed.2d 453 (1966), which declined to give full retroactivity to the doctrine of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) but recognized it as authority for all cases pending on direct appeal at the time of its decision.

The position of the court below, that *Massiah* should not be applied to any cases tried before the date of its decision, has received some support in other circuits. In Lyles v. Beto, 362 F.2d 503 (5 Cir. 1966), one of the cases which was remanded by the Supreme Court "in light of Massiah", the court determined on rehearing that the rule of Johnson v. New Jersey controlled *Massiah* as well as *Escobedo* and *Miranda*. However, it should be emphasized that in *Lyles*, the state conviction had become final long before the *Massiah* decision. Similarly, in United States ex rel. Romano v. Fay, 360 F. 2d 389 (2 Cir. 1966), a pre-*Johnson* decision, the court held that *Escobedo* and *Massiah* were not to be afforded retroactive application. As in *Lyles*, however, the court was confronted with the question of "habeas corpus retroactivity", since Romano's conviction had become final before *Massiah*. Thus, the results in *Lyles* and *Romano* are not at variance with *McLeod*.

The applicability of *Massiah* to cases pending direct appeal at the time of its enunciation has been recognized by the First Circuit in Hancock v. White, 378 F.2d 479 (1 Cir. 1967). Relying on *McLeod*, the court held that the introduction of post-indictment incriminatory statements by a defendant without counsel was prohibited by *Massiah* and applied to cases which were not finally determined when *Massiah* was decided. As in the present case, the question of the ultimate retroactive application afforded *Massiah* was not reached.

See also Elliott v. Warden, 243 Md. 627, 222 A.2d 55 (1966), where the court refused to apply *Massiah* retroactively but reserved its opinion on the application of *Massiah* to cases not finally litigated at the time of the *Massiah* decision.

may not be grounds for reversal of a conviction if the court finds them to have been "harmless beyond a reasonable doubt".

During O'Connor's trial, the state seized upon his statements made at interrogation that while in New York before his arrest he knew the New Jersey police were looking for him. These statements were introduced, commented upon in the prosecution's closing argument, and included in the trial court's charge as indicative of wilful flight to avoid prosecution and hence evidence of guilt. The appellee now seeks to characterize the statements as "not inculpatory admissions concerning the central fact of guilt".[20] To argue that such statements were not inculpatory admissions raises the question: If they were not, for what purpose were they introduced?

In his classic treatise on evidence, Professor Wigmore notes that:

"It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." 2 Wigmore § 276.

In Embree v. United States, 320 F.2d 666 (9 Cir. 1963), the court observed that: "The conduct of an accused person in seeking to flee following the commission of an alleged crime may be circumstantially relevant to prove both the commission of the act and the intent and purpose with which it was committed." 320 F.2d at 668.

The jury that convicted O'Connor was entrusted not only with deciding his guilt, but also with determining the degree of felonious homicide, i. e., first or second degree murder or manslaughter. Admission of defendant's statement, inferring flight and guilt may have been a critical factor in the jury's finding of malice and premeditation necessary for his conviction of first degree murder.[21] Where such possibility, if not probability, exists, the introduction of constitutional error cannot be characterized as harmless beyond a reasonable doubt.[22] A defendant in a criminal case is as entitled to a proper determination of the degree of guilt as he is to a determination of the question of guilt itself.

Accordingly, we will vacate the order of the court below and remand the case with the direction that the District Court issue a writ of habeas corpus to O'Connor without prejudice to the right of the State of New Jersey to undertake appropriate action in the further prosecution of this matter.

20. The state also asserts that the introduction of these statements was not prejudicial because the defendant "took the stand and voluntarily gave a detailed description and disclosure of his flight". The Supreme Court has recently emphasized that "the question is not *whether* the petitioner made a knowing decision to testify, but *why*." In Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), the Court held that where unconstitutionally obtained evidence was introduced against a defendant who thereafter testified to explain or mitigate the impact of the admission, the burden was on the government to "show that its illegal action did not induce his testimony". We are convinced that the state made no such showing in the present case.

21. See U.S. ex rel. Johnson v. Yeager, 399 F.2d 508 (3 Cir. 1968), where this court viewed the introduction of improper evidence as "substantial, perhaps even critical" to the question of the degree of guilt. No less can be said of the present appeal in light of the circumstances surrounding the homicide.

22. Because we decide that this was not harmless error, we do not reach the question of whether a violation of the *Massiah* rule requires an automatic reversal without the necessity of applying the *Chapman* test. In this respect, see Commonwealth ex rel. Firmstone v. Myers, 431 Pa. 628, 246 A.2d 371 (1968), where the court held that a violation of the rule of White v. Maryland, 373 U.S. 59, 83 S. Ct. 1050, 10 L.Ed.2d 193 (1963), requiring the assistance of counsel at any "critical stage" in criminal proceedings, mandates "an automatic reversal without regard to whether the error could have been harmless".