**UNITED STATES of America**

**v.**

**Neil Antonio MIDGLEY, Appellant.**

**No. 05–5019.**

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit LAR 34.1(a) Feb. 27, 2006.

Filed: March 2, 2007.

Sarah L. Grieb, Office of United States Attorney, Philadelphia, PA, for United States of America.

David L. McColgin, Samuel J.B. Angell, Defender Association of Philadelphia, Federal Court Division, Philadelphia, PA, for Neil Antonio Midgley.

Before: McKEE, ALDISERT, Circuit Judges, RESTANI [1], Judge.

OPINION OF THE COURT

ALDISERT, Circuit Judge.

In his appeal from a 27–month sentence, imposed on a guilty plea, Neil A. Midgley argues that the District Court erred in determining that he previously had been convicted of a crime of violence, the basis for a 16–level enhancement in his total offense level and a corresponding increase in his Sentencing Guidelines range. We will affirm.

I.

In 1994, Midgley was arrested in connection with the shooting of his girlfriend. He pleaded guilty to two misdemeanors: possession of an instrument of crime in violation of 18 Pa.C.S. § 907, and simple assault in violation of 18 Pa.C.S. § 2701. In Pennsylvania, simple assault carries a two-year statutory maximum sentence and possession of an instrument of a crime carries a five-year statutory maximum sentence. Midgley was deported to Jamaica in 1999, but was arrested again on January 5, 2005, this time by federal Immigration and Customs Enforcement agents in Philadelphia. He pleaded guilty to one count of illegal re-entry after deportation in violation of 8 U.S.C. § 1326(a) and (b)(1). In calculating his sentence, the Probation Office found that Midgley deserved a base offense level of eight under U.S.S.G. § 2L1.2(a), and a 16–level increase under U.S.S.G. § 2L1.2(b)(1)(A) because he had been deported after a prior conviction for a felony that was a crime of violence. Combined with a three-point reduction for acceptance of responsibility, this yielded a total offense level of 21 and an advisory guideline range of 37 to 46 months. The District Court accepted the 16–level enhancement but employed its discretion to sentence Midgley to 27 months, 10 months below the low end of the Sentencing Guidelines range. Midgley now argues that the 16–level enhancement was improper.

II.

Section 2L1.2(b)(1)(A) of the United States Sentencing Guidelines provides for a 16–level enhancement if "the defendant previously was deported, or unlawfully remained in the United States, after … a conviction for a felony that is … a crime of violence." Midgley does not seriously contest that he was convicted of a felony for purposes of 2L1.2(b)(1)(A), but argues that he was not convicted of a crime of violence.

We take a categorical approach to assessing whether a statute qualifies as a crime of violence under § 2L1.2(b)(1)(A). *Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Thus, Midgley cannot be found to have committed a crime of violence based on the bare statute of conviction unless every crime falling into the category of acts described by the statute qualifies as a crime of violence.

The provision of the Sentencing Guidelines at issue in this case defines a crime of violence as "… any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, Application

1. Chief Judge, United States Court of International Trade, sitting by designation.

Notes 1(B)(iii). This definition fits within that of 18 U.S.C. § 16(a):

The term "crime of violence" means—

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another....

In *Leocal v. Ashcroft*, the Court addressed the level of intent required for an offense to qualify as a crime of violence under 18 U.S.C. § 16(a), finding that "the key phrase in § 16(a)—the 'use ... of physical force against the person or property of another'—most naturally suggests a higher degree of intent than negligent or merely accidental conduct." 543 U.S. 1, 9, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (alteration in original). In *Popal v. Gonzales*, addressing the Pennsylvania simple assault statute at issue in this case, we held that "[i]t is now settled law in this Circuit that an offender has committed a 'crime of violence' under 18 U.S.C. § 16(a) only if he acted with an intent to use force." 416 F.3d 249, 254 (3d Cir.2005). We concluded in *Popal* that recklessness does not satisfy the requirements of § 16(a). *Id.*

Midgley was convicted of simple assault in Pennsylvania, defined in 18 Pa.C.S. § 2701(a) as occurring when a person:

(1) Attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another;

(2) negligently causes bodily injury to another with a deadly weapon; [or]

(3) attempts by physical menace to put another in fear of imminent serious bodily injury.... [2]

Given that (1) could be satisfied by recklessness and (2) by negligence, Midgley's conviction after being charged with subsec-

tions (1), (2) and (3) does not necessarily qualify as a crime of violence.

## III.

Our inquiry does not, however, end here. Midgley's prior conviction was on a guilty plea, and both parties agree we may look to the plea colloquy to gain more information about whether Midgley's act that led to his prior conviction qualified as a crime of violence.

The government suggests that we might not be limited to the sources of evidence approved by *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). *Shepard* may be distinguishable, the government suggests, because it involved a mandatory minimum sentence under the Armed Career Criminal Act. 18 U.S.C. § 924(e), while the case at bar involves a Guidelines enhancement, and the Guidelines are no longer mandatory. *United States v. Booker*, 543 U.S. 220, 259, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). While any distinction between the case at bar and *Shepard* may depend on a conclusion that *Shepard* rested wholly on a Sixth Amendment rationale—unlike the case it interpreted, *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)—we will not reach the issue of *Shepard's* applicability to Guidelines enhancements. In the case at bar, the plea colloquy provides sufficient basis for our decision, and it is a source of evidence acceptable under *Shepard*.[3] 544 U.S. at 26, 125 S.Ct. 1254.

The plea colloquy took place in the Pennsylvania Common Pleas Court, First Judicial District of Pennsylvania, on August 8, 1996:

---

**2.** Section 2701 contains a fourth subsection, but Midgley was charged with the first three subsections only.

**3.** The government does not point to sources of evidence disallowed by *Shepard* in support of its position that Midgley intentionally shot his girlfriend.

THE COURT: Okay. In order for the Commonwealth to prove the charge of simple assault and possessing instrument of a crime, they would have to prove that certain events occurred in the City and County of Philadelphia when you were eighteen years of age or older, and one possesses the instrument of a crime if he possesses a weapon or some instrument specially adapted for criminal purposes or possessed under circumstances that would give that appearance, and simple assault is proven just simply by showing that bodily injury was sustained by someone else.

At this point, the Commonwealth is going to give a brief summary of what they allege to have occurred in this case. I want you to listen because I'm going to ask you if those facts are substantially true and if that's what you're pleading guilty to today.

MR. ZYLSTRA: Your Honor, the factual basis for the guilty plea is that Tanya Sangster—first name, T–A–N–Y–A; last name is S–A–N–G–S–T–E–R—was shot by the defendant in July of 1994. Let me see if I can give you a specific date. July 16, 1994. She was shot in each leg. The gun was fired twice, but I believe it was just one shot that hit her.

The background was that they had been out at a club. They were dating at the time, Tanya and the defendant. There was an argument. The complainant says in her statement to the police that she was saying things to the defendant that she wished she hadn't said, have said now.

She said, "I should have kept my mouth shut." One of his friends was across the street and said "Are you going to let that bitch talk to you like that?" That's when he decided to shoot her. She went to the hospital and was treated for gunshot to her legs, and I would rest.

THE COURT: All right.

Mr. Midgley, were you listening as the DA was reading about that case?

DEFENDANT: Yes, sir.

THE COURT: And do you recall that argument happening back in July of 1994?

DEFENDANT: Yes, your Honor.

THE COURT: All right.

The court finds the defendant is making a knowing, voluntary and intentional waiver of his right to a trial. The plea is being voluntarily entered, and he may be arraigned.

App. 96–98. Midgley would have us conclude that there was no proof adduced that he intentionally or knowingly shot his girlfriend, and that the shooting could have been the result of negligent or reckless conduct.

## IV.

■ Before we assess Midgley's claim, we first must determine the appropriate standard of review. Typically, we subject to plenary review a district court's determination that a particular act constitutes a crime of violence. *United States v. Dorsey,* 174 F.3d 331, 332 (3d Cir.1999). In this case, however, the government argues that Midgley waived his objection to the 16–level enhancement. We will not allow an appellant to reintroduce an issue waived below. *See United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Waiver, however, does not happen by mistake; it requires " 'an intentional relinquishment or abandonment of a known right or privilege.' " *United States ex rel. O'Connor v. State of New Jersey,* 405 F.2d 632, 634 n. 2 (3d Cir.1969) (quoting *Johnson v. Zerbst,* 304

U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

Although Midgley initially objected to the 16–level enhancement, App. 41, 111–113, the government points to statements made at the sentencing hearing in support of its position that Midgley later waived his right to challenge the enhancement. A lengthy quotation is necessary to provide sufficient context for the key statements by Midgley's attorney, Mr. Edelin:

> MR. EDELIN: ... Your Honor, I think what it boils down to is, the fact that he was receiving a 16–level enhancement for his offense level for a prior sentence that only garners one point on the criminal history category, and only received a two-year probationary sentence just seems to be eschewed somehow which is why we are raising it before the Court. Technically it may qualify as an aggravated felony, but we raised the objection because that just seems eschewed. That does not seem to purport with what we would consider to make sense....
>
> THE COURT: ... Let me just ask, if you could help me, with the previous offenses, they were felonies, weren't they?
>
> MR. EDELIN: Your Honor, there were two misdemeanors.
>
> THE COURT: But they were punishable for more than a year in prison, weren't they?
>
> MR. EDELIN: Yes, Your Honor.
>
> THE COURT: So that—
>
> MR. EDELIN: The simple assault is rated as a misdemeanor and a second degree, which has a two year stat max, and the possession of an instrument of crime is a misdemeanor in the first degree which has a five year stat max.
>
> THE COURT: But doesn't the—don't the Guidelines define felony as a federal,

> state or local offense punishable by imprisonment for a year—
>
> MR. EDELIN: Yes, sir.
>
> THE COURT:—for a term exceeding one year?
>
> MR. EDELIN: Yes, Your Honor.
>
> THE COURT: So for the purposes of the Guidelines, they're felonies.
>
> MR. EDELIN: Yes, Your Honor, which was the point I was trying to make, that while technically they certainly seem to meet the definition, and technically [the Probation Officer] has calculated the Guidelines correctly, that for one Criminal History point, for a Category I Criminal History, and for a two-year probationary sentence, an offense level enhancement of 16 levels seems to be exaggerated.
>
> And so while technically maybe he should get the 16–level enhancement, Your Honor is certainly able to address that exaggeration in the fashioning of your sentence, being that the guidelines range and the guidelines themselves are advisory.

App. 111–114. The government also refers to a brief exchange that took place shortly thereafter:

> THE COURT: And he shot his girlfriend.
>
> MR. EDELIN: Yes, sir....

App. 116.

The statements by Midgley's attorney amounted to forfeiture of Midgley's objection to the 16–level enhancement, but did not go so far as waiver. As Justice Scalia put it, "[w]aiver, the intentional relinquishment or abandonment of a known right or privilege ... is ... one means by which a forfeiture may occur." *Freytag v. Commissioner*, 501 U.S. 868, 894 n. 2, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (citation omitted). Where there has been forfeiture that falls short of intentional waiver, our

review is not precluded; rather, we will review for plain error. Rule 52, Federal Rules of Criminal Procedure; *Government of Virgin Islands v. Rosa*, 399 F.3d 283, 290–291 (3d Cir.2005) ("[s]tated most simply, 'where there was forfeiture, we apply a plain error analysis; where there was waiver, we do not.'" (citation omitted)). In his statements to the District Court at sentencing, Midgley's attorney seems to have been preoccupied with whether or not Midgley's prior convictions qualified as *felonies* under federal law, not whether either qualified as a crime of violence. We do not find that he intended to relinquish any right to object to the determination that Midgley had been convicted of a crime of violence. *See O'Connor*, 405 F.2d at 634 n. 2. The fact remains, however, that Mr. Edelin did state that "technically maybe [Midgley] should get the 16–level enhancement" and—more problematically—that "technically [the Probation Officer] has calculated the Guidelines correctly." App. 111, 113. In making these statements, Midgley forfeited his contemporaneous objection, and we will review for plain error.

## V.

To establish plain error, Midgley must show that (1) the District Court erred; (2) the error was obvious under the law at the time of review; and (3) the error affected substantial rights. *Johnson v. United States*, 520 U.S. 461, 466–467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). If Midgley succeeds in establishing these three elements, we may, in our discretion, award relief. *Id.* The Supreme Court has stated that the "plain-error exception to the contemporaneous-objection rule is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result," *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (citation omitted), and that courts should exercise their discretion to overturn

a lower court's judgment only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736, 113 S.Ct. 1770 (citation omitted).

## VI.

We will not discern plain error in this case. At the reception of Midgley's guilty plea on the simple assault charge, the prosecution introduced a detailed description of facts recounting how Midgley decided to shoot his girlfriend and then shot her. Midgley may not have stated explicitly that the prosecution's characterization of facts was accurate, but he did not take issue with it. Moreover, he admitted to having an argument with his girlfriend. Furthermore, at his more recent sentencing after pleading guilty to federal immigration charges—the sentencing from which Midgley now appeals—Midgley did not offer a contrary view of the facts. Against this backdrop, and considering that the District Court sentenced Midgley below the guidelines range, we are not prepared to conclude that the application of a 16–level enhancement to Midgley's guidelines sentence amounted to a "miscarriage of justice." *Young*, 470 U.S. at 15, 105 S.Ct. 1038. Midgley's statements made during his plea colloquy may have been susceptible to a different interpretation than that reached by the District Court. Considering the high burden of proving plain error, however, we will not disturb the District Court's conclusion.

\*   \*   \*

The judgment of the District Court will be affirmed.