NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1317
_____

UNITED STATES OF AMERICA

v.

PARRISH BARNES,
                          Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-95-cr-00349-001)
District Judge:  Hon. Harvey Bartle, III
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 5, 2015

Before:  FUENTES, JORDAN, and VANASKIE, *Circuit Judges*.

(Filed: December 9, 2015)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Parrish Barnes appeals an order of the United States District Court for the Eastern District of Pennsylvania revoking his supervised release for committing an assault. We will affirm.

## I.    Background

In 1996, Barnes was convicted of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and sentenced to 235 months' incarceration followed by a five-year period of supervised release.  He began his period of supervised release in 2013.  The following year, he was involved in an altercation with Ms. Aisha Vance, his then-partner and the mother of his young son.  After an argument, Vance dropped Barnes off at his grandmother's house and returned to her home.  Shortly thereafter, Barnes appeared at Vance's house and began pounding on the door, demanding to be let in.  He somehow gained entry and went to Vance's bedroom.  What happened next is disputed.  According to the police report, Barnes proceeded to "punch [Vance] with a closed first," resulting in a large gash to her face that required hospitalization and stitches.  (App. at 14.)  Vance stabbed Barnes with scissors during the altercation.

The morning after the incident, Vance told Barnes's parole officer that Barnes had struck her and that she had "fought back using scissors," out of "fear for her children … ."  (App. at 37.)  In a later interview with defense and prosecution counsel, she stated that she did not know who had struck first, and she described the fight as one where they "went at each other."  (App. at 30.)

Barnes was arrested and charged with aggravated assault, burglary, criminal trespass, simple assault, and reckless endangerment in Philadelphia Municipal Court.

2

*Com. of Pa. v. Parish Barnes*, Docket No. MC-51-CR-0033930-2014. The state charges were dropped when Vance, the complaining witness, refused to appear. But the steps to revoke Barnes's supervised release proceeded, having been initiated on the day of the fight, when the government filed a notice of violation of supervised release. That notice detailed the incident and categorized it as a Grade "A" violation of Barnes's terms of supervised release. (App. at 13-15.)

At a hearing on the matter, Barnes was presented with a copy of the notice of violation, which included both factual assertions about the incident, as well as an assessment by the probation officer of the grading of the violation. Barnes confirmed that he had seen the document, discussed the charged violation with counsel, and was aware of the proscription against committing any further state or federal crime. He also admitted that he had struck Vance, causing her injuries. During the colloquy that followed, the prosecuting attorney, defense attorney, and the judge spoke at length about the altercation. The Court was concerned with determining "exactly what happened … in the bedroom," noting that it was "pretty critical" to the case. (App. at 29.) In response, defense counsel proffered, and Vance – who was in attendance – confirmed, that her description of the incident was that they "went at each other." (App. at 30.) Vance did not offer any additional testimony as to the nature of the altercation and was "reluctant … to testify." (App. at 29.) The Court then sought testimony from the probation officer, Officer Bergmann, concerning interviews he had conducted of Vance and Barnes shortly after the incident. He testified that, during his initial interview of Vance, she had told him that "Barnes during the argument had struck her" and that she had "fought back

3

using scissors." (App. at 37.) During Bergmann's interview with Barnes, Bergmann saw the stab wounds, which, according to Barnes, were received "during" the altercation. (App. at 35.)

The Court and counsel then had a detailed discussion of the sentencing criteria and how those criteria should be applied. During that conversation, the prosecutor asserted that Barnes's crime must be either an aggravated assault or a simple assault, and that it was also "definitely a crime of violence." (App. at 43.) Applying the United States Sentencing Guidelines to the facts demonstrated, the prosecutor said, that Barnes's actions constituted a "Grade A violation." (App. at 44.) That, combined with Barnes's criminal history and the underlying crime, yielded a guidelines range of 51 to 63 months, capped at 60 months because the sentence could not exceed the full length of Barnes's supervised release. Defense counsel made no objection to any aspect of that calculation or the assessment of Barnes's crime. Despite the uncontested guidelines range, the prosecutor and defense counsel advocated a sentence of 12 months' incarceration.

In announcing its sentencing decision, the Court was explicit about its reasoning. As to the conduct underlying the charge, it stated that Barnes "did assault Vance." (App. at 60.) More specifically, it concluded that Barnes's offense was a "simple assault" under 18 Pa. C.S. § 2701. While acknowledging that Vance "may have assaulted [Barnes] with scissors," the Court found that Barnes was the aggressor and noted that Barnes "admitted to violation of Pennsylvania law by committing the assault." (*Id.*) As to the sentence, the Court acknowledged the lengthy imprisonment authorized under the guidelines. The Court considered other factors at greater length, however, including the seriousness of

4

domestic violence, Barnes's history of violence, particularly against women, and the need to protect society from Barnes and his conduct. Considering all of those factors "under the totality of the circumstances," the Court sentenced Barnes to 24 months' imprisonment, followed by three years of supervised release. (App. at 61-62.) This timely appeal followed.

## II.     Discussion[1]

On appeal Barnes claims that the District Court erred in categorizing his offense as a "Grade A" violation of the terms of his supervised release and, consequently, calculated an incorrect range under the guidelines and imposed an unduly harsh sentence. Because Barnes did not raise that issue during the revocation proceedings, we review for plain error.[2] *United States v. Olano*, 507 U.S. 725, 732 (1993). To demonstrate "plain error,"

---

[1] The District Court had jurisdiction over Barnes's original criminal trial under 18 U.S.C. § 3231, and jurisdiction to determine whether to revoke Barnes's supervised release pursuant to 18 U.S.C. § 3583(e). We have jurisdiction to review the District Court's final decision pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2] The government argues in its brief that Barnes actually waived any ability to challenge the sentence during the revocation proceedings. In order to find a waiver, there must be "intentional relinquishment or abandonment of a known right." *United States ex rel. O'Connor v. State of New Jersey*, 405 F.2d 632, 634 n.2 (3d Cir. 1969) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). The government asserts that Barnes's counsel agreed to the violation and grading specified in the petition and, consequently, Barnes cannot now object to that grade simply because he did not receive the extent of downward variance he had hoped for. Had Barnes's counsel agreed that Barnes's conduct constituted a "Grade A" violation of his supervised release, that argument might have been waived. But the record contains no such agreement. Barnes did acknowledge that he had seen the petition to revoke his supervised release, that he had discussed the violation with his lawyer, and that he understood the terms of his supervised release. He also agreed that he struck Vance on the date in question. But that is the extent of Barnes's substantive testimony. At no point did he or his counsel explicitly concur with

5

a defendant must prove that the Court erred, that the error was "clear" or "obvious," and that the error "affect[ed] substantial rights" of the defendant. *Olano*, 507 U.S. at 733-35; Fed. R. Crim. P. 52(b). The defendant bears the burden to prove each of those points. *Olano*, 507 U.S. at 734. Even if the defendant succeeds in that proof, reversal for plain error is "permissive, not mandatory" and should only be granted when there is an error that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 735-36 (citations omitted).

In this case, Barnes asserts that the District Court committed plain error by classifying his offense as a simple assault in violation of 18 Pa. C.S. § 2701(a), a second-degree misdemeanor. 18 Pa. C.S. § 2701(b). He claims that the altercation was "a fight or scuffle entered into by mutual consent" in violation of 18 Pa. C.S. § 2701(b)(1), which constitutes a third-degree misdemeanor. That distinction is of consequence, as it would lower Barnes's violation level to Grade "C" and consequently lower his guidelines range to 8 to 14 months.[3] Barnes contends that Pennsylvania defines a fight "entered into by mutual consent" broadly, and, based on Vance's position that the two parties "went at each other," he claims there can be no other proper conclusion than that the offense was a "mutual consent" assault rather than a simple assault. We disagree.

---

the contents of the petition, nor make any other concessions. Consequently, there was no waiver.

[3] Second-degree misdemeanors are punishable by up to two years' imprisonment, whereas third-degree misdemeanors are punishable by imprisonment of no more than a year. 18 Pa. C.S. § 1104.

Under Pennsylvania law, a person is guilty of simple assault when he "intentionally … causes bodily injury to another." 18 Pa. C.S. § 2701(a)(1). That statute also provides, as a mitigation for sentencing purposes, that an assault may be only a third-degree misdemeanor when it is committed "in a fight or scuffle entered into by mutual consent … ." 18 Pa. C.S. § 2701(b)(1). Pennsylvania's model jury instructions provide that a fight by "mutual consent" occurs when "the parties engage[] in the fighting mutually, both desiring to do so." Pa. SSJI (Crim), §15.2701F (2014). Importantly, whether "mutual consent existed" is "a question of fact for the fact finder." *Commonwealth v. Mathis*, 464 A.2d 362, 366 (Pa. Super. Ct. 1983).

At bottom, Barnes's argument is predicated on a disagreement with the District Court's findings of fact, to which we must defer absent clear error. *United States v. Blackston*, 940 F.2d 877, 885 (3d Cir. 1991). Clear error is a high standard, and generally cannot be met when a fact-finder has chosen between "two permissible views of the evidence." *United States v. Pelullo*, 173 F.3d 131, 135 (3d Cir. 1999). In her statement to Officer Bergmann on the day of the incident, Ms. Vance stated that Barnes struck her and that she fought back using scissors. The Court credited that statement. Moreover, the record suggests that Barnes initiated the altercation by appearing uninvited in Vance's bedroom in the middle of the night and aggressively resuming an earlier argument. That evidence is sufficient to make it a "permissible view" that Barnes was "clearly … the aggressor," as the Court found. (App. at 60.) The District Court's factual findings were not clearly erroneous, and thus there was ample support for its determination that Barnes had committed simple assault. That, in turn, supports the Court's assessment of Barnes's

7

conduct as a Grade "A" offense and the ultimate guidelines calculation. In short, there was no error in the District Court's ruling, let alone plain error.

## III. Conclusion

For the forgoing reasons, we will affirm.