## ELLIOTT *v.* WARDEN OF THE MARYLAND PENITENTIARY

[App. No. 143, September Term, 1965.]

628

*Decided July 27, 1966.*

Before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

MARBURY, J., delivered the opinion of the Court.

In 1957 petitioner, John Wesley Elliott, was convicted of murder in the first degree and was sentenced to death. On direct appeal his conviction was affirmed by this Court on December 19, 1957, in *Elliott v. State,* 215 Md. 152, 137 A. 2d

130. The petitioner's sentence was thereafter commuted to life imprisonment, after which he instituted two federal and one state habeas corpus proceedings as well as this, his third petition for post conviction relief. On February 5, 1965, Chief Judge Thomsen of the U. S. (Md.) District Court, ruled on Elliott's second federal habeas corpus petition and denied the petitioner relief on all grounds alleged with the exception of item 3 (b) which read as follows:

"(3) that his conviction was obtained by the admission in evidence of a written statement which he made to the police on November 11, 1956, after his indictment on November 8, and which he now claims * * * (b) was made after indictment, when he was not represented by counsel, and had neither been advised of nor waived his right to counsel."

Judge Thomsen observed that this contention had never been presented to the Maryland courts, since, at the time of his previous hearings, *Massiah v. United States,* 377 U. S. 201 (May 18, 1964), 12 L. Ed. 2d 246, 84 S. Ct. 1199, had not been decided, and that the Maryland courts should be given an opportunity to decide the issue raised by contention 3 (b) before the Federal District Court ruled on this point. Judge Thomsen concluded that: "This Court will therefore postpone entering any order herein until Elliott has filed a new petition under the PCPA raising that point and the Maryland Courts have had an opportunity to consider the effect of *Massiah* and of any question of waiver which may be raised by the Attorney General."

The present petition was filed as the result of Judge Thomsen's order and on November 18, 1965, a hearing was held before Judge Harold Grady. A stipulation of facts was entered into by Elliott, through his counsel and by the respondent through the State's Attorney for Baltimore City, in which it was admitted that a written statement was taken from Elliott three days after he had been indicted for the crime of murder and that in the statement he admitted shooting the victim, although he attempted to justify the killing as self defense. It was further stipulated that the police officers, before taking the

statement from Elliott, did not advise him of his right to have an attorney appointed to assist him in his defense. At the hearing, at which the petitioner was present, Judge Grady found as a fact that the petitioner had not requested an attorney but ruled that there were no facts presented which would permit the finding that the petitioner had intentionally relinquished or abandoned the known right to the assistance of counsel, and thus that right had not been waived. *Fay v. Noia,* 372 U. S. 391, 439, 9 L. Ed. 2d 837, 83 S. Ct. 822. In denying post conviction relief, Judge Grady ruled that: (1) the rule enunciated in *Massiah,* which prohibits the introduction into evidence against the declarant his post indictment statements that implicate him in the crime for which he has been indicted and which are made at a time when he is without the assistance of counsel, is to be applied in *state* criminal proceedings; (2) that Elliott's post indictment statement is within the *Massiah* prohibition even though his statement was otherwise voluntary and there was no express request for counsel made prior to making the statement; (3) that *Massiah* should not be applied in the instant proceeding under the Maryland Uniform Post Conviction Procedure Act since Elliott's conviction was final prior to the date on which the *Massiah* decision was rendered, and that the principle enunciated in *Massiah* should not be applied retroactively.

*Massiah* was a federal case in which the defendant had been indicted by a grand jury, had obtained a lawyer and entered a plea of not guilty to the (narcotics) charge upon which he had been indicted. The defendant was out on bail when, by use of a hidden radio transmitter and the cooperation of a codefendant, federal agents deliberately elicited incriminating statements from the defendant in the absence of his attorney. Without reaching the Fourth Amendment questions raised by the use of the secret radio transmitter, the Supreme Court held that the use of the statements against the defendant at his trial denied him his constitutional right to the assistance of counsel which is guaranteed by the Sixth Amendment in all criminal prosecutions. Although the decision in *Massiah* was a federal case, recent decisions of the Supreme Court have made it clear that the right to assistance of counsel provided in the Sixth Amendment is "made obligatory upon the states by the Four-

teenth Amendment," *Gideon v. Wainwright,* 372 U. S. 335, 342, 9 L. Ed. 2d 799, 83 S. Ct. 792; *Escobedo v. Illinois,* 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and thus the principle enunciated in *Massiah* is applicable to state court proceedings.

As the State concedes, the prohibition laid down in the *Massiah* case was meant to apply to the type of police questioning such as that which brought about Elliott's statement in the present case. Under the *Massiah* test, absent an effective waiver of Sixth Amendment rights, no inculpatory statement which is made by an indicted declarant will be allowed into evidence against him if such a statement is elicited from the accused when he does not have counsel present. The above interpretation is compelled by the language used in *Massiah,* at page 205 of 377 U. S., wherein Mr. Justice Stewart, speaking for the six member majority of the Court, quotes with approval the following language used in *People v. Waterman,* 9 N. Y. 2d 561, 565, 175 N. E. 2d 445, 448:

> "Any secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime."

Moreover, in the case of *State v. McLeod,* 203 N. E. 2d 349, the Supreme Court of Ohio had a case similar (except that it was on direct review) to the instant one wherein the sole question presented was whether the *Massiah* exclusionary rule applied to a post indictment statement given to the police. After the Supreme Court remanded the Ohio Court's original determination for consideration in the light of *Massiah,* the Supreme Court of that State attempted to distinguish the case from *Massiah* on the ground that the confession was "otherwise voluntary" (whereas in *Massiah* the statement had been obtained by trickery) and on the ground that the defendant in *McLeod* had retained no counsel at the time of his statement. Elliott likewise had retained no counsel at the time he gave his statement and it was otherwise voluntary, but that such fac-

tual variances were immaterial was later conclusively shown in *McLeod v. Ohio*, 381 U. S. 356, 14 L. Ed 2d 682, 85 S. Ct. 1556, where, after granting certiorari, the Supreme Court reversed the Ohio Court in a per curiam opinion, citing *Massiah, supra*.

We come next to the question whether the principle enunciated in *Massiah* should be applied retroactively to cases such as the instant one, which had been finally litigated (no further possibility for direct review by any court) prior to May 18, 1964—the date on which *Massiah* was decided. Our resolution of this question has been made measurably less difficult by the recent (June 20, 1966) decision of the Supreme Court in *Johnson v. New Jersey*, 384 U. S. 719, wherein it was held that the constitutional principles enunciated in *Escobedo* and *Miranda v. Arizona*, 384 U. S. 436, should be given only prospective application to cases in which trial had commenced before those decisions were announced. One of the newly recognized constitutional principles enunciated in *Miranda* was that the accused, absent waiver, had an absolute right to the presence of counsel during in-custody interrogation by the police. The practical effect of this particular portion of the *Miranda* rule is to move back the point of time when the accused (who is asked to give a statement which implicates him in a crime) has the right to assistance of counsel even though he does not specifically request it. Beginning with *Massiah* such a right was recognized to exist only if the accused was indicted. After *Miranda* this right was extended to the non-indicted accused. In the *Johnson* case, Chief Justice Warren, for the Court, pointed out at page 728 of the opinion that when determining the question of whether a constitutional principle should be applied retroactively, the deciding court must closely examine the "peculiar traits of the specific 'rule in question' ", citing *Linkletter v. Walker*, 381 U. S. 618, 629, 14 L. Ed. 2d 601, 85 S. Ct. 1731 (1965) ; and *Tehan v. Shott*, 382 U. S. 406, 410, 15 L. Ed. 2d 453, 86 S. Ct. 459 (1966). In our view it would be exalting form over substance to distinguish the peculiar traits of the *Massiah* rule from that portion of the *Miranda* rule which simply applies that rule to a broader range of cases, and thus all the reasons delineated by the Supreme Court in *Johnson*

for not making *Miranda* retroactive would apply with equal force as reasons for not making *Massiah* retroactive, and we adopt those reasons.

It is to be noted that in *Johnson* the Supreme Court made the application of the exclusionary principles of *Escobedo* and *Miranda* purely prospective—that is the principles gleaned from either of the cases need only be applied to cases which were *commenced* after those decisions were announced. However, the Supreme Court left room for broader application in the state courts if they saw fit. To dispose of the instant case we need only decide whether the *Massiah* rule should be applied retroactively to cases such as Elliott's which were *final* as of the date the *Massiah* opinion was rendered. We hold that the *Massiah* principle is not to be applied to cases which were final as of that date, but we do not decide the question of whether that principle should apply to cases which were then still open to direct review.

In *Davis v. North Carolina,* 384 U. S. 737, decided the same day as *Johnson, supra,* the Supreme Court recognized that a case commenced before *Miranda* need not be reversed *solely* because the accused was not advised, prior to police interrogation, that he had the right to have counsel present, but held that such a failure to advise was a *"significant factor" in all cases* when determining whether the confession was substantively voluntary. In *Davis,* which reversed the petitioner's conviction because his confession was not excluded, besides failure to advise him of his right to counsel the Court found several other factors [1] which made the confession substantively involuntary. In the post conviction hearing before Judge Grady, the petitioner presented no other evidence which, when coupled with the absence of counsel, would make the confession invol-

---

1. Among those factors were the facts that (1) Davis was an impoverished Negro with only a third or fourth grade education; (2) contained on Davis' arrest sheet was the directive by the police that no one was to be permitted to see the accused and he was not to be permitted to use the telephone; (3) no one other than the police saw the accused during the 16 days of detention and interrogation that preceded his confession; and (4) his diet was extremely limited while in custody and this could well have adversely affected his physical strength and his ability to resist confession.

634

untary, and thus *Davis* is clearly distinguishable from the instant case. Cf. *Westfall v. State,* 243 Md. 413.

At the hearing the petitioner also put forth the contention that post conviction relief should be afforded him by virtue of the decision of this Court in *Schowgurow v. State,* 240 Md. 121, 213 A. 2d 475. By the express language of that opinion we limited its application to cases which were not finally litigated as of October 11, 1965, and thus the principles enunciated therein avail Elliott nothing since his case was finally litigated more than seven years prior to that date. *Thomas v. Warden,* 241 Md. 730, 217 A. 2d 356 (1966) ; *Husk v. Warden,* 240 Md. 353, 214 A. 2d 139 (1965).

*Application denied.*