Commonwealth *v.* Coyle, Appellant.

Argued January 22, 1964; reargued January 13, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Mary Alice Duffy,* with her *Sara Duffy,* for appellant.

*William H. Wolf, Jr.,* Assistant District Attorney, with him *Robert H. Finkel* and *Alan J. Davis,* Assist-

74

ant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, September 26, 1967:

On November 20, 1959, John J. Coyle was convicted by a jury in Philadelphia County of murder in the first degree and punishment was fixed at death. Following the dismissal of post-trial motions and imposition of sentence in the court below, an appeal was entered and prosecuted in this Court. Lengthy briefs were filed on behalf of Coyle and the Commonwealth, and oral argument presented. After a studied consideration thereof, we filed an opinion on October 14, 1964, overruling the multiple averred assignments of error—with one exception. Since evidence of incriminating statements made by Coyle to investigating officers following his arrest had been introduced against him at trial, and the trial court had not made an independent judicial determination of the voluntariness of these statements, the record was remanded to the court below for a post-trial hearing and determination of the voluntariness question in accordance with the ruling in *Jackson v. Denno,* 378 U.S. 368 (1964). We further directed that following this proceeding, the court below file here a report of its findings and conclusions. Until such was received and considered, we reserved final judgment. See 415 Pa. 379, 203 A. 2d 782 (1964).

In conformance with our mandate, an extensive "Jackson" hearing followed below and on February 11, 1966, the trial court filed on opinion wherein it concluded that the statements involved were voluntarily made by Coyle and free from any coercive influences which would constitutionally proscribe evidentiary use thereof at trial. Exceptions to these findings were filed and subsequently overruled by the court en banc. Upon

the filing in this Court of the record of the "Jackson" hearing and the findings resulting therefrom, we ordered that reargument proceed before us, limited to four questions:

(1) Were the incriminating statements of Coyle admitted at his trial secured in violation of his constitutional rights?

(2) Were said incriminating statements inadmissible in evidence at trial under *Massiah v. United States,* 377 U.S. 201 (1964), or under any other decision of the Supreme Court of the United States or of this Court?

(3) Did the "Jackson" hearing conducted in the court below meet the requirements of due process, and the standards required by *Jackson v. Denno*?

(4) Were the findings and conclusions reached by the trial court following the "Jackson" hearing and reported to this Court valid and proper and are they supported by the record?

Coyle was convicted of acting in concert with his brother, William,[1] in the killing of a city policeman in Philadelphia, Pennsylvania, on the early morning of June 5, 1959. He was apprehended in Massachusetts by the police of that Commonwealth shortly after nine o'clock a.m. on June 17, 1959. We will not again repeat the circumstances incident to the killing in Philadelphia, Coyle's flight from Pennsylvania and the commission of other crimes of violence during this period, or his ultimate capture after a running gun battle with the Massachusetts police in an effort to avoid arrest. The factual background thereof is sufficiently stated in our previous opinion in 415 Pa. 379. We shall confine our present discussion to the issues posed during reargument.

---

[1] William Coyle was fatally shot by the Massachusetts police when he resisted arrest. For details, see opinion, 415 Pa. 379.

.When apprehended Coyle immediately made "on the spot" incriminating admissions to one of the arresting police officers. Upon being removed to the area head-quarters of the Massachusetts State Police, he was briefly questioned by two Philadelphia police officers, and beginning about 10:40 a.m. was subjected to an extensive formal recorded interrogation by a lieutenant of the Massachusetts State Police. Coyle unhesitat-ingly answered all inquiries and described in detail the killing in Philadelphia and the criminal activities engaged in following his flight from the murder scene.[2]

Later that day the district attorney of Philadelphia arrived in Massachusetts and beginning about 9:30 p.m. interviewed and questioned Coyle, who again readi-ly cooperated in answering all questions. Before this particular interrogation began, the district attorney informed Coyle that if he desired legal counsel before answering any questions such assistance would be pro-vided, and if he did not care to answer any questions it was not necessary to do so. Coyle replied he did not need counsel and was aware of his rights.

The following day, June 18, 1959, Coyle waived ex-tradition and was returned to Philadelphia. That night he indicated a desire to make some changes in his previous statements and as a result was interviewed by an assistant district attorney.

The prime question for decision is whether or not the admission in evidence at trial of any or all of Coyle's admissions and statements constituted a denial of due process.[3]

---

[2] During this interrogation Coyle was without the assistance of legal counsel and was not warned of his right to remain silent.

[3] All trial errors which violate the Constitution do not auto-matically call for a reversal. See *Chapman v. California*, 386 U.S. 18 (1967), and *Fahy v. Connecticut*, 375 U.S. 85, 86-87 (1963). However, if a coerced confession is admitted in evidence at trial, the judgment must be reversed even though the confession involved

Coyle first contends that all of his statements and admissions were made under circumstances which compel the conclusion that they were the result of coercion and duress. After a careful consideration of all the attending circumstances, we are persuaded that this is just not so, and that the question of voluntariness was one for factual determination. Moreover, we are convinced that Coyle, completely frustrated and weary of running, was relieved to tell his story to the authorities.

---

was totally unnecessary to the conviction: See *Haynes v. Washington*, 373 U.S. 503, 518-519 (1963); *Stroble v. California*, 343 U.S. 181, 190 (1952); and, *Malinski v. New York*, 324 U.S. 401, 404 (1945). And this is so even though there are other unchallenged prior confessions: *Haynes v. Washington*, supra, and *Stroble v. California*, supra (dictum). See also, Recent Developments, 65 Mich. L. Rev. 563 et seq. (1967).

While the United States Supreme Court has not yet expressly stated that the automatic reversal rule will take a similar absolute precedence over a harmless error rule in those situations where the constitutional inadmissibility of a particular confession does not stem from coercion, we will assume for the purposes of this case that such is the law and anything to the contrary indicated in our prior decision in 415 Pa. 379 should be disregarded. But see, *People v. Jacobson*, 63 Cal. 2d 319, 405 P. 2d 555 (1965) (multiple confessions), cert. denied, 384 U.S. 1015 (1966); and *People v. Cotter*, 63 Cal. 2d 386, 405 P. 2d 862 (1965) (multiple confessions). Cf. *People v. Rollins*, 56 Cal. Reptr. 293, 423 P. 2d 221 (1967).

The California Supreme Court apparently justifies the removal of the *Jacobson* and *Cotter* decisions from the ambit of the automatic reversal rule on two grounds: (1) Since the constitutional taint in those cases did not arise from coercion (but from the omission of required warnings, etc.), *Malinski* and its many progeny are not binding thereon, and, (2) Since there were multiple confessions, where the "good" preceded the "bad" (thus obviating the argument that the legally obtained were induced by the illegally obtained), the improperly gotten statements were merely cumulative and thus there was no "reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, supra at 86.

While the evidence involved was obtained when Coyle was without the assistance of counsel, and there was no waiver thereof as of the time he was questioned by the lieutenant of the Massachusetts State Police, this did not per se constitutionally proscribe evidentiary use of his admissions and statements at trial. Likewise, since the trial occurred in 1959, the failure to warn him of his right to remain silent before the first questioning began did not necessarily invalidate the evidence. See *Davis v. North Carolina*, 384 U.S. 737 (1966); *Johnson v. New Jersey*, 384 U.S. 719 (1966). However, the absence of counsel and warnings of constitutional rights were significant factors to be considered in determining the voluntariness issue: *Davis v. North Carolina*, supra.

In support of his contention that everything he said to the authorities was involuntary, Coyle now asserts that throughout the entire period of questioning he was actively psychotic and lacked the capability to perform any "meaningful act of volition." Medical testimony to support this position was offered and the Commonwealth presented testimony in rebuttal. After an extensive discussion and analysis of this evidence, the court below concluded that at the time involved Coyle was not psychotic or mentally ill and the testimony to the contrary was incredible and completely refuted by the facts and the record. We emphatically endorse and affirm this conclusion.

Coyle particularly challenges the evidentiary use at trial of the recorded statements he made to the assistant district attorney on the night of June 18th in Philadelphia. It is insisted that during this questioning he was denied the assistance of already retained counsel in violation of his rights under the Sixth Amendment.

It appears that before this interview commenced, Philadelphia friends of Coyle had, without his knowl-

edge, retained Miss Alice Duffy of the Philadelphia bar to represent him. While the district attorney had personally been apprised of this fact, the assistant district attorney, who interviewed Coyle, had not. While the interview involved was in progress, Miss Duffy spent some time in a room adjoining the room where Coyle was being interviewed making an unsuccessful effort to see him. Neither the assistant district attorney nor Coyle were aware of or notified of her presence while the interview was taking place. Shortly thereafter, upon being informed of Miss Duffy's presence on Coyle's behalf, the assistant district attorney told Coyle that Miss Duffy, an attorney, wished to see him. Coyle replied, that he did not know her, did not want a lawyer, and particularly a woman lawyer.

The next morning, at the request of the assistant district attorney, Coyle signed the following statement: "Q. Mr. Coyle, last night, as I informed you, Miss Mary Alice Duffy, an attorney, was in Room 117 City Hall and said that she was your attorney, having been retained by your friends. As I further informed you, you had an absolute right, and still have an absolute right to be represented by counsel at all stages of this proceedings. Am I correct in this statement? A. Yes. Q. Am I further correct in that you stated to me last night that you were not represented by counsel, and that at this time, you had no desire to be represented? A. Right. Q. Is it still your intention as you stated to me last night that you prefer to be represented by whatever counsel that court selects and appoints to defend you? A. Yes. Q. Do you know Miss Duffy? A. No. Q. Do you desire to see or confer with her or any other attorney at this time? A. No. Q. Is this your statement given voluntarily, that is, of your own free will, and is everything stated here correct? A. Yes."

Later that day Coyle was transferred to the Holmesburg Prison in Philadelphia. About ten o'clock p.m.,

Attorney Duffy appeared at the prison and requested permission to see him. Upon being informed of this, he refused to see her. He was then visited by the friends from Philadelphia who had made arrangements for her services. After this the appellant changed his mind and asked to see Attorney Duffy, which opportunity was immediately given.

In determining whether or not Coyle was deprived of his constitutional right to the assistance of counsel during his interview with the assistant district attorney on the night of June 18th, all of the attending facts must be considered. It is most significant that on the night of June 17th, the day before the interview concerned occurred, Coyle had been told, as noted before, that if he wished the aid of counsel before making any statement such assistance would be provided. In response to this advice, Coyle replied that he did not need counsel and was aware of his rights. If the foregoing be true,[4] and we are convinced it is, there can be no question but that on the night of June 18th, Coyle was fully aware he could have counsel if he so desired, and despite this knowledge, persisted in his attitude that he did not want such aid and particularly the services of Miss Duffy, and this thinking continued until the following night. It must also be noted that this interview resulted from Coyle's own request to effectuate a few changes in his previous narratives of the crime. In view of these facts, it is our conclusion that Coyle was not deprived of the constitutional right to the assistance of counsel at the time involved.

The next argument advanced against the admissibility of the evidence of Coyle's statements to the authorities is admittedly perplexing.

The killing, as noted before, occurred on June 5, 1959. The case was brought before the grand jury on

---

[4] It remained uncontradicted throughout the testimony at trial and the "Jackson" hearing.

June 12, 1959, with permission of the court and on that date Coyle was indicted for murder.[5] Hence, all of Coyle's statements to the investigating officers were obtained as a result of questioning subsequent to indictment and while he was without the aid of legal counsel. It is also clear that when the first recorded statement was given to the lieutenant of the Massachusetts State Police shortly following his apprehension, there was no waiver of the right to such assistance. The question then follows: Was evidentiary use of the statements, particularly the one given to the Massachusetts State Police, proscribed by *Massiah v. United States,* supra.[6] We conclude not.

Factually, *Massiah* has no resemblance to the instant case, and whether or not *Massiah* absolutely bans all post-indictment police interrogation in the absence of defense counsel has given rise to conflicting views.[7]

---

[5] Where an accused has taken sanctuary in another state, the district attorney may present an indictment before the grand jury, without a previous binding over with permission of the court. *Brown v. Commonwealth,* 76 Pa. 319 (1874) ; *Commonwealth v. O'Brien,* 181 Pa. Superior Ct. 382, 124 A. 2d 666 (1956) ; *Commonwealth v. Shupp,* 6 Kulp 430 (Luzerne County Ct. 1890). It is a long established practice in Pennsylvania to aid in expediting extradition.

[6] Although *Massiah* was a federal prosecution, it is our conclusion that it is included in the "Fourteenth Amendment Due Process Approach" section of the United States Constitution, and in light of *McLeod v. Ohio,* 381 U.S. 356 (1965) (memorandum) is applicable to state prosecutions as well. See also, Development in the Law of Confessions, 79 Harv. L. Rev. 938 (1966) ; Constitutional Law—Right to Counsel, 26 U. Pitt. L. Rev. 151 (1964) ; and *Elliot v. Warden of Maryland Penitentiary,* 243 Md. 627, 222 A. 2d 55 (1966).

[7] See Constitutional Law—Right to Counsel, 39 Tulane Law Review 581 (1965) ; The Coming of Massiah: A Demand For Absolute Right to Counsel, 52 Georgetown Law Journal 825 (1964) ; The Admissibility of Voluntary Confessions in the Absence of Counsel, 16 Mercer Law Review 343 (1964) ; Criminal Law . . . Interrogation in the Absence of Counsel, 19 Southwestern Law Jour-

Most authorities interpret it to have such a sweeping effect. Others believe that the real problem facing the court in *Massiah* was the permissible extent of governmental deceit inherent in undercover work and the use of informers.

Regardless, and assuming arguendo that *Massiah* does ban absolutely all post-indictment police interrogation in the absence of defense counsel regardless of the circumstances, it is still our conclusion that *Massiah* need not be applied retrospectively and hence is not controlling here.

The above conclusion is buttressed by the recent decision of *Stovall v. Denno,* 388 U.S. 293 (1967),[8] wherein the court refused to apply its rulings in *United States v. Wade,* 388 U.S. 218 (1967), and *Gilbert v. California,* 388 U.S. 263 (1967), retroactively. In *Wade* and *Gilbert,* the Court held for the first time that a police lineup is a critical stage in the prosecution process, and the right to counsel guaranteed by the Sixth Amendment attaches at that time, and any such identification evidence secured in the absence of counsel is constitutionally tainted and inadmissible at trial. As in *Massiah,* the rulings in *Wade* and *Gilbert* created a new area of privileged communication and the reasons which prompted the Court's conclusion in *Stovall,* that *Wade* and *Gilbert* should be applied prospectively only, apply with equal force in determining the impact and application of *Massiah* here.

---

nal 384 (1965) ; and Kurland, Foreword, The Supreme Court 1963 Term, 78 Harv. L. Rev. 143, 217-223 (1964).

[8] See also *Johnson v. New Jersey,* 384 U.S. 719 (1966) ; *Elliot v. Warden of Maryland Penitentiary,* 243 Md. 627, 222 A. 2d 55 (1966) ; *Lyles v. Beto,* 363 F. 2d 503 (5th Cir. 1966) (Per Curiam) ; *United States ex rel. Romano v. Fay,* 360 F. 2d 389 (2d Cir. 1966) ; and, *In re Lopez,* 62 Cal. 2d 368, 398 P. 2d 380 (1965).

Coyle also contends that the "Jackson" hearing did not meet the standards of due process and fulfill the requirements of *Jackson v. Denno,* supra. This argument is in large part bottomed upon the mistaken premise that the hearing court was in error when, in considering the trial record to determine the voluntariness question, it did not require that the trial witnesses be recalled by the Commonwealth for further inquiry. This was not error, since Coyle was given every opportunity at the hearing to present any further testimony desired. See *Townsend v. Sain,* 372 U.S. 293 (1963), and *Commonwealth ex rel. Norman v. Stitzel,* 425 Pa. 184, 228 A. 2d 373 (1967). Nor was it error for the trial judge to preside at the "Jackson" hearing. This is particularly so in view of the fact that the disputed issue was later completely reviewed below by a three-judge court en banc.

Coyle finally complains that following the "Jackson" hearing, the court below did not make specific and detailed findings of fact. Since the necessary conclusions of the court below "appear from the record with unmistakable clarity", formal findings of fact were unnecessary. See *Sims v. Georgia,* 385 U.S. 538 (1967).

Judgment affirmed.

Mr. Justice COHEN dissents.