KIRK OLIVER FRYSON *v.* STATE OF MARYLAND

[No. 475, September Term, 1972.]

*Decided March 12, 1973.*

The cause was argued before ORTH, C. J., and CARTER and GILBERT, JJ.

*Jack E. Richards* for appellant.

*Harry A. E. Taylor, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Alan Horvitz, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Kirk Oliver Fryson, appellant, was convicted in the Criminal Court of Baltimore, by a jury, of attempted robbery with a dangerous and deadly weapon. Appellant was sentenced to incarceration for a period of ten years.

On appeal, an attack is made upon, *inter alia,* allegedly improper remarks made by the prosecutor during rebuttal argument to the jury. Because we conclude, for the reasons hereinafter stated, that the remarks were indeed prejudicial to the appellant's rights to a fair and impartial trial, we shall reverse the judgment of conviction. In view of our holding, we do not reach the other issues raised in this appeal.

The record in the instant case reveals that on August 18, 1971, at approximately 3:30 p.m., appellant hailed a taxicab at Howard Street and North Avenue, in Baltimore City, and directed the driver to transport appellant to 33rd Street and Greenmount Avenue. Appellant rode on the right front seat of the vehicle. After the cab had arrived at the designated site, the appellant directed the driver to take appellant to Druid Hill Park. The driver testified that during the course of the ride the appellant commented upon the beauty of the driver's ring. The appellant had a black cowboy-type hat on his lap. The driver testified that upon his arrival in the park he observed that the appellant had a butcher knife under the hat. The driver quickly got out of the cab, and the appellant fled, while the cab driver, yelling for assistance, followed in pursuit. The cab driver acknowledged that the appellant did not say anything to him about holding him up nor did appellant make any demand upon him. The driver, because of the sudden appearance of the knife, assumed that he was about to be held up. He said that when the knife came into view, it was "[j]ust the same as pulling out the knife, and saying, 'This is it.'"

One of several persons who was at the nearby tennis courts in Druid Hill Park joined in the chase of appellant, but the appellant outdistanced and eluded his pursuers. The cab driver returned to his cab and started back to the taxi garage. The other pursuer reported the happening to the police. Thereafter, an officer, having been supplied with a description of the appellant, detected the appellant amid a group of juveniles. When the

officer started toward the appellant, the appellant ran, scaled a seven foot fence and hid. The officer espied the appellant and arrested him at gunpoint. The appellant was then transported to the police station where he was read his *Miranda* rights, and after signing his initials behind each of the provisions contained therein, subscribed his full name to the bottom of the form, thereby acknowledging a waiver of *Miranda*.

At the trial, a suppression hearing was held out of the presence of the jury, and the trial court seemingly concluded [1] that appellant's oral statement was admissible into evidence. [2]

Appellant took the stand in his own behalf and denied any intent to rob the taxi driver.

We were informed during oral argument and in the appellant's brief that the Assistant State's Attorney told the jury during his rebuttal argument that if the appellant was found guilty he would "be put on probation," and that the trial court has access to "plenty of parole officers, and social workers and things like that." The record, however, is silent as to what exactly transpired other than an objection by appellant's counsel to the non-recorded remarks, and the trial court's sustaining thereof. [3] At the hearing on the motion for a new trial, an allegation pertaining to the above quoted remarks was made. The trial court responded:

"The Court sustained the objection during closing argument to that portion of the argument objected to by the defendant, and took all

---

1. The record is silent as to any ruling by the court. The jury was recalled and the State proceeded with a presentation of testimony similar to the one which had occurred during the suppression hearing. Although it is clear that the State and the appellant treated the non-suppression of the statement as a denial of the motion, the better practice is that there be a specific ruling on the admissibility of the testimony. *Fowler v. State*, 6 Md. App. 651, 253 A. 2d 409 (1969); Md. Rules 522 d 3; 725 f.

2. This ruling was attacked in this Court, but in view of our holding, we need not and do not reach it.

3. Rule 32 (b) of the Rules of Court of the Supreme Bench of Baltimore provides for transcribing argument upon request.

steps requested by the defendant with respect thereto."

Actually, all the trial court did was to sustain the objection.

The court's response to appellant's claim of what transpired during the State's rebuttal argument gives credence to the factual basis of appellant's allegation. Moreover, the State does not contest the fact that the remarks were made, but argues that appellant failed to request curative jury instructions.

Such remarks on the part of the prosecutor are highly prejudicial. *Shoemaker v. State*, 228 Md. 462, 180 A. 2d 682 (1962) ; *Holbrook v. State,* 6 Md. App. 265, 250 A. 2d 904 (1969). In *Shoemaker,* the Court of Appeals considered a case wherein statements were made by the prosecuting attorney during argument to the jury that related to parole. Objection was made and overruled and the comments continued. The Court said, at 468:

> *"The statements with regard to parole in the context in which they were made here, we think, exceeded the limits of permissible comment by the prosecutor.* This Court has never had occasion, as far as we are informed, to consider the question whether remarks relating to possible parole, or similar remarks, constituted reversible error. Of course, each case depends a good deal on its own facts, even where the remarks may fall into the same classification. References by a prosecutor to the right of appeal, the possibility of executive clemency and parole of a defendant have, however, been considered by many other courts. Although there are decisions each way, *we think that the better reasoning and the weight of authority are against the propriety of such arguments."* (Emphasis supplied).

It is said in 23A C.J.S., *Criminal Law*, § 1116, at 234-236:

> "Broadly stated, however, it is the court's duty, when counsel has been guilty of improper argument or conduct, to act so as to preserve the rights of accused to the end that he will receive a fair and impartial trial. Thus, where the circumstances are such as to require it, it is the court's duty to sustain objections to improper argument or conduct, and whether or not requested but especially when requested, so to admonish and instruct the jury as to remove any improper influence which the argument might exert, as by instructing the jury to disregard it. . . ." (Footnotes omitted).

In the instant case, the trial judge sustained the objection to the impermissive argument, but did nothing further. We think that in order for an accused to be afforded a fair and impartial trial, the trial judge should not only sustain an objection to a highly prejudicial remark, but should admonish the jury and instruct them to disregard the improper argument.

The general rule regarding improper remarks to a jury was set forth in *Holbrook v. State, supra*. There we said, at 270:

> "The rule is that 'unless it appears that the jury were actually misled or were likely to have been misled or influenced to the prejudice of the accused by the remarks of the State's Attorney' reversal of a judgment of conviction will not be justified. In applying this rule it appears that a significant factor in determining whether the jury were likely to have been misled or influenced to the prejudice of the accused by an improper remark is whether the trial court took appropriate action to overcome a likelihood of

prejudice, *e.g.* informing the jury that the remark was improper, striking it and admonishing them to disregard it." (Citations omitted).

In the instant case, we think there is a substantial likelihood that the jury was prejudiced by the prosecutorial remarks concerning "probation" and "parole." The argument, as made by the prosecutor, may have led the jury to conclude that although the evidence might be weak, no real harm could be done to the appellant because he would be placed on probation and thus receive some form of beneficial supervision.

In *Conway v. State,* 7 Md. App. 400, 256 A. 2d 178 (1969), then Chief Judge Murphy (now Chief Judge of the Court of Appeals of Maryland) said, at 414:

". . . [T]here are some instances where the prosecutor's improper argument before a jury is of such consequence and magnitude, and so threatens to deprive the accused of his right to a fair trial, that the trial judge, even absent objection, bears the responsibility on his own to take curative action in an attempt to overcome the likelihood of prejudice."

*See also Viereck v. United States,* 318 U. S. 236, 63 S. Ct. 561, 87 L. Ed. 734 (1943) ; *Contee v. State,* 223 Md. 575, 165 A. 2d 889 (1960) ; *Holbrook, supra.*

Under the circumstances of this case, the sustaining of an objection to the egregious remarks, standing alone, fell short of curing the deleterious effect that the ill-considered comments may have had on the jury. Not only should the objection have been sustained, but the trial judge should have taken immediate remedial action by striking the remarks and admonishing the jury to disregard them. It was not enough for the trial court to simply do all he was "requested" to do. Trial judges are under an obligation to afford an accused a fair and impartial trial. Even absent an objection to improper jury

argument, the judge should exercise his authority to "maintain strict control over the trial" in order "to protect the fair and unprejudicial workings of judicial proceedings." *Ferry v. Cicero,* 12 Md. App. 502, 280 A. 2d 37 (1971). *See DeMay v. Carper,* 247 Md. 535, 233 A. 2d 765 (1967); *Little v. Duncan,* 14 Md. App. 8, 284 A. 2d 641 (1971).

*Judgment reversed.*
*Case remanded for a new trial.*