MARK EDWARD BLIZZARD *v.* STATE OF
MARYLAND

[No. 365, September Term, 1975.]

*Decided January 30, 1976.*

The cause was argued before ORTH, C. J., and GILBERT and LOWE, JJ.

*Robert N. Dugan, Assigned Public Defender,* for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Edward Seibert, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Thomas Jefferson, on July 31, 1788, wrote a letter to James Madison, freshly returned from his duties as Virginia delegate to the Constitutional Convention and the Convention's chief recorder, in which he referred to the Constitution of the United States as, " . . . a good canvas, on which some strokes only want retouching." The Congress and the courts of this country have, from time to time, applied the strokes deemed necessary to retouch the canvas, with the Supreme Court exercising its role as the master artist. In that capacity, the Court, speaking through Mr. Justice Stewart,[1] declared, in *Massiah v. United States,* 377 U. S. 201, 206, 84 S. Ct. 1199, 12 L.Ed.2d 246 (1964):

" . . . We hold that the petitioner was denied the basic protections of that guarantee [the Sixth Amendment right to counsel] when there was used

[1]. The Court decided Massiah v. United States by an apparent vote of six to three. Mr. Chief Justice Warren, together with Justices Black, Douglas, Brennan, Stewart and Goldberg composed the majority. Mr. Justice White wrote a dissent and was joined therein by Justices Clark and Harlan.

against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." [2]

Shortly afterwards the Court was presented with *McLeod v. Ohio*, 378 U. S. 582, 84 S. Ct. 1922, 12 L.Ed.2d 1037 (1964). There a question similar to that raised in *Massiah* confronted the nine justices of the Supreme Court. The judgment was vacated and the cause remanded to the Ohio Supreme Court in order that they might re-examine their decision in the light of *Massiah*. The Ohio Court, in a per curiam opinion, *State v. McLeod*, 1 Ohio St. 2d 60, 203 N.E.2d 349 (1964) endeavored to distinguish *McLeod* from *Massiah*. The Court pointed out that McLeod, eight days after indictment, voluntarily made an oral confession to an assistant prosecutor and to a deputy sheriff while McLeod was " . . . riding around in the sheriff's automobile searching for the gun used in the holdup." The majority of the Court observed [3] that the statements were willingly made and that no counsel had been appointed. The majority quoted the last two sentences of the opinion authored by Mr. Justice Stewart in *Massiah*:

" . . . We do not question that in this case, as in many cases, it was entirely proper to continue an investigation of the suspected criminal activities of the defendant and his alleged confederates, even though the defendant had already been indicted. All that we hold is that the defendant's own incriminating statements, obtained by federal agents under the circumstances here disclosed, could not constitutionally be used by the

---

**2.** Massiah had been indicted for narcotics law violations and released on bail. The co-defendant permitted a federal agent to "bug" the co-defendant's motor vehicle. The agent, with an appropriate receiving device, overheard incriminatory statements made by Massiah to the co-defendant. The agent, over objection, was allowed to testify as to the content of those statements.

**3.** Two of the seven judges dissented on the basis that Massiah required a reversal.

prosecution as evidence against him at his trial." [4]
377 U. S. at 207.

The majority found comfort in the fact that the "...
'circumstances' under which his [McLeod's] incriminating
statements were given were wholly different from those in
*Massiah.*" 203 N.E.2d at 351. The court affirmed its prior
stand. McLeod again petitioned the Supreme Court for
*certiorari* which was granted. Whatever distinction the Ohio
court made between *McLeod* and *Massiah* did not convince
the Supreme Court, for they reversed in a per curiam
opinion, *McLeod v. Ohio,* 381 U. S. 356, 85 S. Ct. 1556, 14
L.Ed.2d 682 (1965). The full text of the opinion read:

> "The motion for leave to proceed *in forma
> pauperis* and the petition for writ of certiorari are
> granted. The judgment is reversed. *Massiah v.
> United States,* 377 U.S. 201."

Two years after the *Massiah* decision the Supreme Court
handed down its opinion in *Miranda v. Arizona,* 384 U. S.
436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). *Massiah* was
bottomed on the Sixth Amendment right to counsel.
*Miranda* was founded upon the Fifth Amendment protection
against self-incrimination. With the announcement of the
*Miranda* holding, the significance of *Massiah* was to some
extent diminished, but it was by no means eradicated.
*Massiah-Miranda* guards against surreptitiously obtaining
incriminating statements from an accused absent a
knowingly and intelligently made waiver of the Con-
stitutional right to the presence of counsel. We shall now
turn to a discussion of the instant case and the application,
*vel non,* of *Massiah* thereto.

Mark Edward Blizzard, appellant, was arrested and
charged with robbery with a deadly weapon of a pharmacy
in Baltimore County. Blizzard was subsequently indicted for

---

4. The Sixth Amendment right to counsel was made obligatory upon the
several States through the Fourteenth Amendment, by Gideon v.
Wainwright, 372 U. S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799 (1963). *See also*
Young v. State, 5 Md. App. 383, 387, 247 A. 2d 751, 753-54 (1968).

that offense and allied charges. At trial in the Circuit Court for Baltimore County, before a jury, the State used the testimony of two alleged accomplices to demonstrate Blizzard's culpability as one of the three or four persons who robbed the pharmacy of "Class A" drugs and cash. An individual customer was also relieved, at gunpoint, of her wallet containing $56. None of the persons, save one, who were in the pharmacy at the time of the robbery could identify Blizzard as one of the robbers. Notwithstanding the fact that the two gunmen who entered the store had their faces concealed, one with a ski mask and the other with a nylon stocking, an employee made a positive identification of appellant as the individual who held a gun on her.

Blizzard's defense was twofold. Firstly, he sought to show through three witnesses and himself that he was at home repairing a friend's automobile at the time the pharmacy was robbed. Secondly, he produced the testimony of two inmates of the Baltimore County jail who told the jury that a co-defendant of appellant, one Markert,[5] had told them that he and one Phillips [6] had robbed the pharmacy, and that they, Markert and Phillips, were going "to frame" Blizzard.

The State, in rebuttal, called Sergeant Zero of the Baltimore County Police Department who testified over strenuous objection that he was telephoned from the county jail and told that Blizzard wanted to see him. The transcript reveals the following:

> "THE WITNESS: . . . I went down to the Jail and I talked to the Defendant and another subject, and when I first met him I told him I didn't even want to talk to him about the armed robbery he was involved in being the Defendant.
>
> By Mr. Seibert [Assistant State's Attorney]:

---

**5.** Markert was tried separately, found guilty, and sentenced to fifteen years imprisonment. He is not a party to this appeal.

**6.** Phillips was not charged, although he admitted, in his testimony, that he participated in the crime. The record indicates that he was granted immunity. *But see* Bowie v. State, 14 Md. App. 567, 287 A. 2d 782 (1972).

Q Is that the first conversation?

A Yes.

Q What happened then?

A I told him I had him up tight in this armed robbery.

MR. DUGAN [Defense Counsel]: Objection. May we approach the Bench?

THE COURT: Objection overruled. This is what you told him?

THE WITNESS: Yes, this is what I told him.

THE COURT: What did he answer?

MR. DUGAN: May we approach the Bench?

THE COURT: Let him finish the question.

THE WITNESS: He answered, he told me he knew it but he wished to talk to me about other cases.

THE COURT: That is what he said?

THE WITNESS: Yes, sir."

The record reflects that the conversation between Zero and appellant occurred two months after indictment of appellant, six weeks after initial counsel had entered his appearance for appellant, a month after Mr. Dugan had entered his appearance, and sixteen days before trial. Thus, it is clear that the *Massiah* stage was set at the time of Zero's visit to the county jail.

Appellant argues that the trial judge's allowing of Sergeant Zero's testimony violates the precepts of *Massiah* and, therefore, requires a reversal. The State's polemic to that contention is that *Massiah* is not " . . . applicable where the statement was voluntary and was not 'deliberately elicited' from a defendant." To bolster its argument the State relies upon a series of federal cases, *i.e.*, *United States v. Gaynor*, 472 F. 2d 899 (2d Cir. 1973); *United States v. Garcia*, 377 F. 2d 321 (2d Cir. 1967); *Gascar v. United States*, 356 F. 2d 101 (9th Cir. 1965), *cert. denied*, 385 U. S. 865, 87 S. Ct. 125, 17 L.Ed.2d 92 (1966); *United States v. Gardner*, 347 F. 2d 405 (7th Cir. 1965), *cert. denied*, 382 U. S. 1015, 86 S. Ct. 626, 15 L.Ed.2d 529 (1966); *United States v. Accardi*, 342

F. 2d 697 (2d Cir. 1965), *cert. denied,* 382 U. S. 954, 86 S. Ct. 426, 15 L.Ed.2d 359 (1965). We are unpersuaded, however, by any of them.

*Gaynor* dealt with a spontaneous utterance made to a postal inspector in a courthouse elevator. It ". . . was not a part of any interrogation, [and] . . . it was not elicited by the Postal Inspector." 472 F. 2d at 900. The trial court apparently found that the statement was voluntarily made. *Gaynor,* we believe to be unpersuasive because, not only did the Second Circuit neglect to distinguish *McLeod secundum,* but there seemingly was a factual finding by the trial court that Gaynor's statement was voluntary. In the case now before us, there is no such finding. The trial judge allowed the State to set the scene for the use of Zero's rebuttal testimony by inquiring of Blizzard what he had told the sergeant. Blizzard responded, "Nothing.".

*Garcia* is factually inapposite. In that case the government interrogator was unaware that Garcia had been indicted and the subject matter of his inquiry was not directed toward ". . . seeking information about the crime the indictment charged had been committed."

*Massiah* has no application to *Gascar* which involved voluntary incriminatory statements spoken to various government agents during the commission of criminal acts and at the time of arrest. Gascar had not been indicted at the times of these statements, nor is there any indication that counsel had been appointed. The court quoted its prior case, *Grier v. United States,* 345 F. 2d 523, 524 (9th Cir. 1965), wherein they noted that ". . . One is not entitled to counsel while committing his crime. . . ." The *Gascar* court explained that the statements were made during investigation of criminal transactions. They were not made during a process of interrogation as was prohibited by the *Massiah* meaning of "investigation."

*Gardner* involved a conversation between two prisoners, and into which a deputy marshal injected himself. During the conversation the marshal described to the other prisoner the ironic events of Gardner's bank robbery in which Gardner got trapped in the bank. Gardner voluntarily

responded with an explanation of how he literally "broke out" of the bank. The court held that *Massiah* did not apply in that the "... admissions ... [were] not deliberately elicited." *McLeod secundum* was decided by the Supreme Court on May 24, 1965, approximately six weeks before *Gardner,* but it is apparent from a reading of *Gardner* that the court did not consider the second *McLeod* disposition.

*Accardi* was decided prior to *McLeod secundum.* The issue of *Massiah's* application was not raised in the trial court. Even if it had been raised, the appellate court held on the facts that Accardi was not questioned about the matter for which he stood indicted, but rather voluntarily disclosed the inculpatory information to the federal agent.

Whatever eroding of *Massiah's* tenets may have been indulged in by courts of some other states or some of the Federal courts,[7] Maryland adheres to the principle pellucidly

---

7. The United States Circuit Courts of Appeal have taken diverse approaches to applying *Massiah.* Some courts have by a broad construction of *Massiah* held inadmissible all post-indictment statements obtained when counsel is not present. *See* United States *ex rel.* O'Connor v. New Jersey, 405 F. 2d 632 (3d Cir. 1969), *cert. denied,* Yeager v. O'Connor, 395 U. S. 923, 89 S. Ct. 1770, 23 L.Ed.2d 240 (1969); Hancock v. White, 378 F. 2d 479 (1st Cir. 1967); State v. Green, 46 N. J. 192, 215 A. 2d 546 (1965). Compare Queen v. United States, 335 F. 2d 297 (D.C. Cir. 1964); Ricks v. United States, 334 F. 2d 964 (D.C. Cir. 1964) (point recognized but not discussed).

Other circuits have adopted "... a more restrictive view of *Massiah,* allowing the admission of post-indictment statements voluntarily and deliberately made by a properly warned defendant who was not tricked into speaking by some deliberate act of the investigating officers." United States v. DeLoy, 421 F. 2d 900, 902 (5th Cir. 1970). *See also* the following cases which are substantially to the same effect: Moore v. Wolff, 495 F. 2d 35 (8th Cir. 1974); United States v. Kaylor, 491 F. 2d 1127 (2d Cir. 1973); United States v. Thomas, 474 F. 2d 110 (10th Cir. 1973); United States v. Tucker, 435 F. 2d 1017 (9th Cir. 1970); Cephus v. United States, 352 F. 2d 663 (D.C. Cir. 1965); Hayes v. United States, 347 F. 2d 668 (8th Cir. 1965); Payne v. United States, 340 F. 2d 748 (9th Cir. 1965); Latham v. Crouse, 338 F. 2d 658 (10th Cir. 1964); Jackson v. United States, 337 F. 2d 136 (D.C. Cir. 1964); State v. Darwin, 29 Conn. Sup. 423, 290 A. 2d 593 (1972); People v. Furnish, 63 Cal. 2d 511, 407 P. 2d 299, 47 Cal. Rptr. 387 (1965); People v. Dorado, 394 P. 2d 952, 40 Cal. Rptr. 264 (1964); Commonwealth v. Frongillo, 268 N.E.2d 341 (Mass. 1971); People v. Lopez, 28 N.Y.2d 23, 268 N.E.2d 628, 319 N.Y.S.2d 825 (1971).

Very recently in United States v. Anderson, 523 F. 2d 1192, 18 Cr. L. Rptr. 2265 (5th Cir. Nov. 28, 1975), the Fifth Circuit condemned the action by Drug Enforcement Administration officials who transgressed *Massiah* by surreptitiously sending an informer disguised as a prostitute to a physician who had been indicted for drug violations. The doctor made self-incriminating statements to the informer and otherwise inculpated

engraved into our case law by the Court of Appeals, in *Elliott v. Warden,* 243 Md. 627, 222 A. 2d 55 (1966). The *Elliott* Court declared that "... Under the *Massiah* test, absent an effective waiver of Sixth Amendment rights, no inculpatory statement which is made by an indicted declarant will be allowed into evidence against him if such a statement is elicited from the accused when he does not have counsel present." The Court concluded that its interpretation was "... compelled by the language used in *Massiah.* ..." 243 Md. at 631. *Elliott* also makes manifest that absent effective waiver of counsel even "a voluntary" statement is inadmissible, 243 Md. at 631-32, citing the Supreme Court's summary disposition of *McLeod secundum.*[8]

This Court, in *Sabatini v. State,* 14 Md. App. 431, 448, 287 A. 2d 511, 520 (1972), *cert. denied* 265 Md. 742 (1972), interpreted *Elliott's* waiver exception. We said:

> "... We do not construe *Massiah* as holding that an accused may never effectively waive assistance of counsel once he has counsel representing him or that a waiver of assistance of his counsel can never be effective in the absence of waiver also by that counsel."

The State further suggests that the statement allegedly made by appellant to the police sergeant was not "deliberately elicited" and, therefore, was admissible. We do not see it that way. In our view, the police officer inferentially, at least, knew that appellant had been indicted and that counsel represented him. The sergeant's conversation at the jail with appellant should have been preceded with the *Massiah-Miranda* warnings. Moreover, we believe that the tenor of the sergeant's opening remarks may well have been calculated to bait appellant.

---

himself by "verbal acts." The court held that both the oral statements and the verbal acts were uttered or made at a time when the presence of counsel was required by *Massiah* and hence they were not admissible.

8. In Brown v. State, 10 Md. App. 215, 232, 269, A. 2d 96, 106 (1970), we refused to expand the Massiah holding so as to embrace statements made, not by Brown, but by another party who had been indicted and was interviewed out of the presence of her counsel. We noted that Constitutional rights are personal and not vicarious.

Based upon our Constitutionally mandated independent review of the record, *Sabatini v. State, supra,* and *Herbert v. State,* 10 Md. App. 279, 269 A. 2d 430 (1970), we observe no finding therein indicating that Blizzard had waived his right to counsel. Furthermore, as we read *Elliott v. State, supra,* and *State v. McLeod, supra,* together with *McLeod secundum,* we are led to the belief that, while *Massiah* may not proscribe all post-indictment voluntary statements of an accused, as where waiver is present, *Sabatini v. State, supra,* it most certainly forbids the introduction into evidence of such testimony absent a finding of voluntariness grounded upon waiver of counsel's presence.

The long and the short of our holding is that once counsel has been appointed or retained, and his appearance is a matter of record, any post-indictment statement pertaining to the subject matter for which the accused has been indicted,[9] elicited by the authorities, absent an effective waiver of the right to the presence of counsel, affirmatively shown in the record, is proscribed by *Massiah* and *Elliott.* *See also United States v. New Jersey,* 351 F. 2d 429 (3d Cir. 1965). Any proceeding to determine whether an accused effectively waived his right to the presence of counsel at the time he allegedly made a statement must be conducted out of the presence of the jury, if there be a jury.

Admission of Sergeant Zero's testimony concerning appellant's statement, under the circumstances of the case *sub judice,* constitutes reversible error.

We deem it advisable to comment upon another issue raised by this appeal. We do so because there seems to be some confusion regarding jury instructions as to the testimony of an accomplice. The appellant requested that the following advisory instruction be given to the jury:

> "The testimony of an accomplice must be weighed with great care and be scrutinized closely, carefully and cautiously. This testimony, which is subject to great suspicion, must be viewed with

---

9. *See* Michigan v. Mosley, 44 U.S.L.W. 4015 (U. S. Dec. 9, 1975).

distruct [sic] and acted on only after due and careful deliberation."

The judge charged the jury:

"In this case you have heard the testimony of two accomplices that were involved in the crime for which the Defendant has been accused. Before you may consider the testimony of an accomplice as forming the basis of a case against the Defendant you must be convinced that the prosecution has introduced corroborative evidence that supports the testimony of the accomplice under consideration as to material facts tending to show that the accused was identified with the perpetrator of the crime or had participated in the commission of the crime. Corroboration of an accomplice's testimony need not extend to every detail in order to be sufficient to convict, and it is sufficient if it is just slight corroboration; but you must have some corrobation in an accomplice's testimony. Corroborative evidence as such is evidence other than that which has been obtained from the accomplices; in other words, with the accomplices' testimony you must have other evidence, and that other evidence is corroborative if you feel it does corroborate their testimony."

Following the judge's advisory instructions the appellant's counsel excepted to the charge on the basis that, "Even if the Court doesn't give it [an instruction dealing with the testimony of accomplices] in my form, I think there should be some instruction to the Jury that they should consider the testimony of an accomplice more cautiously and with greater care than that of an ordinary witness." The court refused to supplement its initial charge.

The Court of Appeals in *Hardison v. State*, 226 Md. 53, 61, 172 A. 2d 407, 411 (1961), speaking through Judge Prescott (later Chief Judge), said:

"The refusal of the trial judge to inform the jury who, in law, are, and who are not, accomplices . . .

and the law with reference to the necessity for the corroboration of an accomplice's testimony constitutes reversible error. Testimony of an accomplice should be closely scrutinized and juries should be cautioned, upon request, in the form of an advisory instruction that conviction cannot stand on accomplice's testimony alone, but that corroboration is necessary as to material points."

The Court, in *Watson v. State*, 208 Md. 210, 217, 117 A. 2d 549, 552 (1955) put it more forcefully, saying:

". . . The reason for the rule requiring the testimony of an accomplice to be corroborated is that it is the testimony of a person admittedly contaminated with guilt, who admits his participation in the crime for which he particularly blames the defendant, and it should be regarded with great suspicion and caution, because otherwise the life or liberty of an innocent person might be taken away by a witness who makes the accusation either to gratify his malice or to shield himself from punishment, or in the hope of receiving clemency by turning State's evidence."

To the same effect *see Mason v. State*, 12 Md. App. 655, 662-665, 280 A. 2d 753, 759-760 (1971), *cert. denied* 263 Md. 717 (1971); *Gaskins v. State*, 7 Md. App. 99, 103, 253 A. 2d 759, 761-762 (1969).

*Hardison, Watson, Mason* and *Gaskins* state the underlying reasons for the rule concerning instructions relative to accomplices. They are not, however, to be read as mandating that the trial judge is required to instruct the jury that the testimony of accomplices must be viewed with caution and suspicion. It is enough that the jury be advised that the testimony of the accomplice must be corroborated in material aspects even though the corroboration may be slight.

Judge Digges, recently in *State v. Grady*, 276 Md. 178, 345 A. 2d 436 (1975), *aff'g, Grady v. State*, 24 Md. App. 85, 329 A. 2d 726 (1974), pointed out the difficulty that arises

when appellate opinions are "lifted" and turned into jury instructions. He said:

"Finally, since the language which was misleading in this case was taken almost verbatim from our opinion in *Floyd v. State,* 205 Md. [573], ... 581, 109 A. 2d 729 [(1954)], we comment upon the use of excerpts from judicial opinions when instructing a jury. Again we suggest that it is not always appropriate to quote from appellate decisions in jury instructions since the language employed in a particular opinion may not adequately inform jurors of their responsibility." 276 Md. at 186, 345 A. 2d at 440.

The trial judge, obviously mindful that he should not use excerpts from appellate opinions in his jury instructions, properly declined to inform the jury of the underlying basis for the rule that the accomplice's testimony must be corroborated. It is sufficient that the jury was informed that there must be corroboration. We perceive no error in the instant case's instructions, and we think the charge, when read as a whole, set forth the appropriate law.

Appellant has advanced a third issue which we think should be discussed, notwithstanding that our decision with respect to the first issue is dispositive of the appeal. On July 1, 1974, Md. Rule 1224 d was adopted. It provides:

"Each court reporter assigned to record a proceeding shall record verbatim by shorthand, stenotype, mechanical or electronic sound recording methods, or any combination of these methods, subject to regulations and standards prescribed by the Chief Judge of the Court of Appeals.

1.  Criminal Cases

(a) Trial on Merits Other Than District Court Appeals.

In criminal cases, other than appeals from the District Court, the entire trial on the merits held in open court, includ-

ing opening statements and *closing arguments of counsel.*" (Emphasis supplied).

Appellant, in the instant case, asserts that the Assistant State's Attorney made an improper jury argument which was highly prejudicial to appellant. The transcript reveals merely the following occurred at a bench conference during the prosecution's closing argument to the jury:

"MR. DUGAN [Defense Counsel]: I move for a mistrial based on the fact that in his closing argument the prosecutor said the Defendant did not call any character witnesses on his behalf. There is no responsibility or burden for the Defendant to call character witnesses. It is the option of the Defendant. It is prejudicial for the prosecutor to comment on that.

MR. SEIBERT [Assistant State's Attorney]: It is a fair comment.

THE COURT: The motion is denied. *If* it was done it is harmless error. (Emphasis supplied).

Appellant perceives a striking similarity between the instant case and *Fryson v. State,* 17 Md. App. 320, 301 A. 2d 211 (1973) where we condemned prosecution forensics in which the jury was told, in a close factual matter, that if the accused was found guilty, he would be "put on probation" or "parole". In *Fryson,* there was ample support within the record, in the form of the trial judge's comments, and the State's failure there to contest the accuracy of the remarks attributable to the prosecution, for us to have drawn a clear inference that the prejudicial comments had, in fact, been made. Md. Rule 1224 d 1 was not *in esse* at the time of *Fryson.* When the instant matter was litigated on February 6 and 7, 1975, Rule 1224 d 1 had been in effect for seven months. Pursuant to its terms, the entire closing argument should have been recorded, and had appellant requested, transcribed as part of the record on appeal. We would then have been able to ascertain whether the remark had, in fact, been made, and in what context. The Assistant State's Attorney's response that, "It is a fair comment," gives rise to

a deduction that the remarks were, in fact, made. The judge's answer at the time of ruling, however, would indicate that there was a question of the remark's actually having been made, at least, in the form presented by appellant. This is so because otherwise there was no need for the judge to preface his reason for denying the motion by the conjunction, "if." It is, of course, highly improper for the prosecutor to comment upon an accused's failure to call character witnesses. ". . . The offering of character evidence is a privilege of the defendant, and the prosecution cannot comment on the failure of the defendant to produce such evidence." 1 *Wharton's Criminal Evidence* § 229 (13th ed. C. Torcia 1972). *See also Taylor v. State*, 28 Md. App. 560, 346 A. 2d 718 (1975); *State v. Markowitz*, 138 Ohio St. 106, 33 N.E.2d 1 (1941). Appellant has not availed himself of his right under Md. Rule 1224 d 1, and the matter has not been properly preserved. Since Md. Rule 1224 d 1 requires that opening statements and closing arguments be recorded, it is incumbent upon counsel, where all or part of the opening statements or closing arguments is challenged, to see that it is transcribed and made a part of the record for our review.

*Judgment reversed.*
*Case remanded for a new trial.*